2015 PA Super 115

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BRIAN J. ROLES, | |
| Appellant | No. 1652 WDA 2013 |

Appeal from the Judgment of Sentence September 25, 2013
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0001464-2012

BEFORE: BOWES, OLSON, and STRASSBURGER,[*] JJ.

OPINION BY BOWES, J.:                                    **FILED MAY 08, 2015**

Brian J. Roles appeals from the aggregate judgment of sentence of eight and one-half to seventeen years' incarceration after a jury found him guilty of homicide by vehicle while driving under the influence ("DUI") of alcohol or controlled substances, homicide by vehicle, aggravated assault by vehicle while DUI, involuntary manslaughter, two counts of recklessly endangering another person ("REAP"), DUI—second offense general impairment, DUI—second offense highest rate, and DUI—second offense drug and alcohol combination.[1]    After careful review, we affirm.

---

[*]  Retired Senior Judge assigned to the Superior Court.

[1] The court also found Appellant guilty of three summary offenses: driving while his license was suspended—DUI-related, careless driving, and public
*(Footnote Continued Next Page)*

The facts of this case arise out of a vehicle collision in which Appellant's sixteen-year-old son was killed. At approximately 10:30 or 10:45 p.m. on Easter Sunday, April 8, 2012, Appellant was driving his truck with his son in the front passenger seat. Kevin Roles, Appellant's nephew, was seated in a rear passenger seat. Appellant lost control of his vehicle and struck a utility pole. The accident caused his son to be ejected from the vehicle. Appellant's son was flung approximately fifty feet from the vehicle and pronounced dead at the scene.

Officer Shaun Gregory arrived on the scene at approximately 10:57 p.m. Appellant admitted to him that he had been driving the vehicle. According to Appellant, he was driving northbound when another car traveling in the opposite direction entered his lane of travel, causing him to lose control and swerve off the roadway onto an embankment. The officer further observed that Appellant had glassy bloodshot eyes, slurred his speech, and smelled of alcohol. Accordingly, Officer Gregory requested another officer to transport Appellant to Conemaugh Hospital for blood testing. While being transported, Appellant repeatedly asked if he killed his son. Blood alcohol testing revealed that Appellant had a blood alcohol content ("BAC") of .17%. In addition, Appellant's blood tested positively for oxycodone and alprazolam, commonly known respectively as Oxycontin and

_(Footnote Continued)_ _____

drunkenness. The jury acquitted Appellant of DUI—while under the influence of any combination of drugs.

- 2 -

Xanax. Appellant also admitted to Dr. Matthew Perry, a treating emergency room doctor, that he had been driving. The Commonwealth filed the criminal complaint in this matter on July 30, 2012. Appellant turned himself in to authorities on August 6, 2012. The case proceeded to trial on August 22, 2013, when jury selection began.

At trial, in addition to the above-referenced facts, the Commonwealth provided testimony from Corporal Thomas Carrick, a Pennsylvania State Trooper and accident reconstructionist, and Greg Sullenberger, an accident reconstructionist and expert in occupant kinematics.[2] Corporal Carrick, during examination by the court, testified that he no longer held the view he expressed in his report that the roof of the truck impacted the utility pole. Instead, he explained, under questioning by the court, that his opinion was now consistent with Mr. Sullenberger as to the place of impact. In this respect, the Commonwealth's experts opined that the truck's sidestep bar on the passenger side struck the pole.

Mr. Sullenberger also testified that the victim's injuries were consistent with having been expelled from the passenger side of the vehicle. Kevin Roles originally testified that Appellant's son had been driving. However, later in the trial, without the Commonwealth having sought the testimony, he tearfully recanted his earlier statements and asserted that Appellant had

---

[2] Occupant kinematics involves the study of how the body moves inside a vehicle during a crash.

been the driver. In contrast, Appellant provided expert testimony from Thomas Laino expressing that Appellant's son had been driving. The jury elected to credit the Commonwealth's evidence and found Appellant guilty of the aforementioned charges. The court imposed sentence, and this timely appeal ensued.

The trial court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court authored its opinion. Appellant raises three issues for this Court's review.[3]

  I.   Whether the Trial Court abused its discretion and/or committed an error of law when it denied Appellant's Motion to Dismiss Charges with Prejudice pursuant to Pa.R.Crim.P. 600?

  II.  Whether the Trial Court erred in sending with the Jury, the Report of Eric Roslonski, MD, which has been marked as Commonwealth's Exhibit 73 but was not admitted into evidence?

  III. Whether the Trial Court erred in not excluding the testimony of Corporal Thomas Carrick and/or not issuing a cautionary or curative instruction to the Jury relative to his expert opinion which was not provided to the Defense prior to trial?

_____

[3] Based on factual disputes arising between the parties relative to two of Appellant's issues, this Court entered a limited remand order for the trial court to clarify whether a Rule 600 hearing was conducted and if certain evidence was submitted to the jury when it retired for deliberations. The court clarified that a Rule 600 proceeding did occur but was unable to conclusively resolve the evidentiary issue. We discuss that matter in more detail *infra*.

Appellant's brief at 4.

Appellant's initial claim relates to Pa.R.Crim.P. 600. Rule 600 requires the Commonwealth to try a defendant within 365 days of the filing of a criminal complaint.[4] A defendant, however, is not automatically entitled to discharge under Rule 600 where trial starts more than 365 days after the filing of the complaint. *Commonwealth v. Goldman*, 70 A.3d 874, 879 (Pa.Super. 2013). Rather, Rule 600 "provides for dismissal of charges only in cases in which the defendant has not been brought to trial within the term of the adjusted run date, after subtracting all excludable and excusable time." *Id*. The adjusted run date is calculated by adding to the mechanical run date, *i.e.*, the date 365 days from the complaint, both excludable and excusable delay. *Id*.

Excludable time includes delay caused by the defendant or his lawyer. *Id*. Concomitantly, excusable delay occurs where the delay is caused by "circumstances beyond the Commonwealth's control and despite its due diligence." *Id*. "Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect

---

[4] Effective July 1, 2013, the Pennsylvania Supreme Court adopted a new Rule 600. The new rule reflects prevailing case law. Pa.R.Crim.P. 600, Comment. The criminal complaint in question was filed prior to the alteration; therefore, we apply the former rule. *Commonwealth v. Brock*, 61 A.3d 1015, 1016 n.2 (Pa. 2013).

vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." ***Commonwealth v. Armstrong***, 74 A.3d 228, 236 (Pa.Super. 2013) (citation omitted).

Additionally, when considering Rule 600, we remain cognizant that Rule 600 serves two purposes. While it is intended to protect a defendant's speedy trial right, it also protects society's interest in prosecuting crime. Accordingly, where "there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime." ***Id***. at 235.

"In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." ***Commonwealth v. Peterson***, 19 A.3d 1131, 1134 (Pa.Super. 2011) (*en banc*). Further, we review "the facts in the light most favorable to the prevailing party." ***Id***. at 1135. Our scope of review is "limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court." ***Id***. The Commonwealth has the burden of establishing by a preponderance of the evidence that it exercised due diligence throughout the prosecution. ***Commonwealth v. Selenski***, 994 A.2d 1083 (Pa. 2010).

Instantly, Appellant was charged on July 30, 2012. Accordingly, his mechanical run date was July 30, 2013. Jury selection began on August 22, 2013, twenty-three days beyond the mechanical run date. Appellant did not

request any continuances and filed a Rule 600 motion on August 19, 2013. The court denied that motion, finding that Appellant was unavailable for trial from July 30, 2012 until September 17, 2012, because his public defender had not entered an appearance. In its subsequent Pa.R.A.P. 1925(a) opinion, the court added that Appellant was unavailable for trial as a result of a stay in an alcohol rehabilitation center.

Appellant argues that the trial court erred in relying on *Commonwealth v. Solano*, 906 A.2d 1180 (Pa. 2006), in determining that "all time during which a defendant lacks an attorney should be excluded[.]" Appellant's brief at 10. He maintains that only "delays attributed to a defendant's lack of representation shall be excluded." *Id*. According to Appellant, his lack of an attorney did not cause a delay in the case. He notes that he did not seek a continuance of the preliminary hearing nor did he request any continuances.

In addition, Appellant submits that the court erred in finding that the period of time in which he was furloughed to a rehabilitation center was excludable. Appellant argues that the cases relied upon by the trial court for this position, *Commonwealth v. Williams*, 445 A.2d 537 (Pa.Super. 1982), and *Commonwealth v. Cohen*, 392 A.2d 1327 (Pa. 1978), do not support that proposition. *Williams* involved a defendant who did not appear for his preliminary hearing in Delaware County. A bench warrant was then issued. Subsequently, Williams was arrested and incarcerated in

Philadelphia. Delaware County was initially unaware of that arrest and under then-Rule 1100, the predecessor to Rule 600, received an extension to bring the defendant to trial. This Court held that Williams was unavailable from the time that he failed to appear at his preliminary hearing until the date the Commonwealth became aware of his incarceration.

*Cohen* also involved Rule 1100. There, the trial court dismissed the case after determining that the Commonwealth sought an extension beyond the 180 day period. On appeal, the Superior Court affirmed, but was reversed by the Pennsylvania Supreme Court. The *Cohen* Court ruled that the defendants' failure to appear for arraignment was attributable to them and that the extension period had therefore not elapsed.

Similar to the trial court, the Commonwealth posits that from August 7, 2012 until September 17, 2012, Appellant was unavailable due to his voluntary commitment in a rehabilitation center.[5] It also maintains that from September 18, 2012 to October 4, 2012, a sixteen day period, Appellant was unavailable because when Appellant returned from treatment, the next available trial date was the October date. Nevertheless, the Commonwealth does not rely on the trial court's reasoning in any other material respect. The Commonwealth submits that the period from

_____

[5] The Commonwealth and Appellant both agree that the period from July 30, 2012 until August 6, 2012, when Appellant turned himself in to police, is excludable.

November 2012 until February 2013 does not count against it because Appellant did not object to those continuances. Appellant, however, did object to the November 30, 2012 continuance. Thus, this portion of the Commonwealth's argument is belied by the record.

The Commonwealth also contends that the period from April 24, 2013 to May 30, 2013 is excusable delay. It asserts that Appellant's submission of his own expert report on April 22, 2013, caused the Commonwealth to continue the case in order to review that report. Lastly, the Commonwealth points out that the trial court explicitly ruled the period from August 1, 2013 to August 22, 2013 excludable.[6]

We agree with Appellant to the limited extent that the trial court's reliance on *Solano*, *Williams*, and *Cohen* stretched those decisions beyond their actual holdings. Pointedly, *Williams* and *Cohen* are wholly inapposite. Furthermore, the court erred in determining that, until October 24, 2012, Appellant delayed the case due to his unavailability. In *Solano*, the Pennsylvania Supreme Court ruled that a thirty-five day delay between the originally scheduled preliminary hearing and the date of the actual hearing

---

[6] Appellant did not request the August 1, 2013 continuance, objected to the continuance, and the continuance was given by the court so that the Commonwealth could complete analyzing evidence from the vehicle involved in this matter that the Commonwealth rather inexplicably only discovered on July 22, 2013. Accordingly, we find the trial court's legal conclusion to attribute the time to Appellant erroneous.

was attributable to the defendant. In doing so, it relied on *Commonwealth v. Manley*, 469 A.2d 1042 (Pa. 1983).

*Manley* held that where proceedings are continued because an indigent defendant appears without counsel and does not waive counsel, the delay is excludable time. In *Manley*, the defendant appeared for trial on May 30, 1978, without counsel. Manley proffered that he had been represented by private counsel at his preliminary hearing but could no longer pay his counsel's fees and was currently unrepresented. The trial court continued the case and instructed the defendant to apply for representation from the public defender's office. On September 1, 1978, the public defender's office entered its appearance. The Supreme Court concluded that the defendant was unavailable for the period from May 30, 1978 to August 31, 1978.

The *Manley* Court found *Commonwealth v. Millhouse*, 368 A.2d 1273 (Pa. 1977), analogous and its rationale persuasive. In *Millhouse*, the High Court ruled that if an actual delay in the case occurs because the defendant "appears for proceedings in connection with his case without defense counsel and such defendant is financially capable of retaining counsel[,]" the delay is excludable time. *Id*. at 1276. There, the defendant was unrepresented from February 6, 1974 until May 28, 1974. Despite the defendant being unrepresented, the court conducted defendant's preliminary arraignment and no delay occurred. However, from March 20, 1974 until

May 28, 1974, the case was delayed due to the defendant's failure to retain counsel. The *Millhouse* Court, therefore, ruled those days to be excludable.

Here, Appellant's lack of an attorney of record did not cause the case to be continued or delayed until September 17, 2012. *Millhouse* plainly stands for the proposition that the mere absence of counsel is not automatically excludable time or the court would have held that the entire February 1974 to May 1974 period attributable to the defendant. Similarly, in both *Solano* and *Manley*, actual proceedings were continued due to the lack of counsel. This case does not present that situation. Thus, *Solano*, *Manley*, and *Millhouse* are not directly controlling. *See also* former Rule 600(C)(3)(a) (setting forth that time is attributable to a defendant if "delay at any stage of the proceedings . . . . results from: (a) the unavailability of the defendant or the defendant's attorney").

In *Commonwealth v. Anderson*, 959 A.2d 1248 (Pa.Super. 2008), this Court appeared to expand *Manley* by holding that the failure to appoint counsel for seventy-seven days was excludable time. However, the *Anderson* Court concluded that the failure to appoint an attorney did result in the proceedings being delayed. The record here simply does not demonstrate that Appellant's change of attorneys delayed any proceedings. *See also Commonwealth v. Derrick*, 469 A.2d 1111 (Pa.Super. 1983) (trial rescheduled from October 26, 1981 until December 11, 1981, after the defendant appeared at the earlier date without counsel); *Commonwealth*

***v. Bussey***, 404 A.2d 1309 (Pa. 1979) (plurality) (period of delay from original preliminary hearing to subsequent hearing due to defendant's failure to retain counsel was excludable).  Instantly, only two days of delay are attributable to Appellant's lack of counsel.  That is the period from September 25, 2012 until September 27, 2012.  Nonetheless, we do not find that Appellant is entitled to Rule 600 relief.

Appellant acknowledged that he was not ready for trial as of September 17, 2012, because he wanted to seek rehabilitative treatment or another attorney.  Thus, the time from September 17, 2012 until November 30, 2012, when the Commonwealth continued the matter due to the unavailability of its own witness, is attributable to Appellant.  This period alone renders Appellant's Rule 600 claim without merit.  Here, the mechanical run date was July 30, 2013.  Jury selection began on August 22, 2013, twenty-three days past the mechanical run date.  Excluding the week from July 30, 2012 to August 6, 2012, reduces the period to sixteen days.  The time between September 17, 2012 and November 30, 2012 is in excess of sixteen days.  Therefore, Appellant's claim fails.

The second issue Appellant levels on appeal is that the court erred in purportedly sending to the jury a report by Dr. Eric Roslonski, marked as Exhibit 73, to the jury.  Appellant avers that this report was not admitted into evidence, contained an admission, and was improperly provided to the jury during its deliberations.  The Commonwealth in its initial brief to this

Court contended that the exhibit was not actually given to the jury. This factual dispute could not be discerned from the record. Accordingly, we remanded to the trial court for a hearing to determine whether the exhibit was admitted into evidence and given to the jury.

The trial court conducted such a hearing, but declared that it was unable to determine whether it provided the exhibit to the jury. At the hearing in question, the court noted that it kept records of the exhibits offered by both parties. The court placed on the record that it did not admit Exhibit 73, Dr. Roslonski's report. It also stated that it "highlighted on the exhibits those which were not sent out to the jury." N.T., 3/2/15 (Vol. I), at 6. Exhibit 73 was not highlighted, but the court set forth that "it was not admitted so it should not have been among the exhibits." *Id*. Nonetheless, the court concluded by stating that it was unclear whether the exhibit was mistakenly sent to the jury.

The Commonwealth presented the testimony of two of the court reporters in this matter. The first court reporter had no independent recollection of whether the exhibit was provided to the jury or if she pulled that exhibit. However, she did indicate that generally an exhibit that is not admitted into evidence is removed from the stack of exhibits that will be submitted to the jury. Appellant's appellate counsel also averred that one of Appellant's trial attorneys had indicated that he had no independent recollection of whether the exhibit went to the jury. The second court

reporter, who was working at the time the Commonwealth offered Exhibit 73 into evidence, testified that her notes indicated that Exhibit 73 had been admitted. Nevertheless, she also had no recollection of whether the exhibit was given to the jury.

At trial, the court initially precluded Dr. Roslonski from testifying, but indicated that, if Appellant stated that he did not inform anyone that he had been driving, the doctor would be permitted to rebut Appellant's testimony. After Appellant claimed that he did not tell anybody that he was the driver, the Commonwealth presented Dr. Roslonski. To refresh the doctor's recollection, the Commonwealth asked him to review a report he prepared based on a medical consultation with Appellant. Dr. Roslonski then testified, consistent with the report, that Appellant had told him that he had been driving at the time of the accident. Following the Commonwealth's direct examination of Dr. Roslonski, it moved for the admission of Exhibit 73. The court responded, "I'll defer ruling until cross." N.T., 8/29/13, at 212. However, the court did not revisit the issue after the conclusion of Dr. Roslonski's testimony. Accordingly, the court never expressly admitted the exhibit into evidence.

The record of the trial proceedings also includes the following relevant exchange.

> Court: The other thing, the exhibits I'm not going to send out are 25, an autopsy photo, 26, 27, 28, 29, autopsy photos. Those are ones I didn't show initially. Also, the 71, the CD animation, Commonwealth's CD animation; Commonwealth 72,

the defendant's driving record; and 23, Defendant's 23, Defendant's animation. I'm not going to be—

Defense Counsel: Both the animations.

Court: Any exception to that or any request that additional ones being kept out of their view? I don't think there was anything in here, the defendant's statement, anything else that we should keep out.

Defense Counsel: No, Your Honor.

N.T., 8/30/13, at 216. Thereafter, the court indicated that Exhibit 31 would not be sent to the jury and reiterated, "So, to recount, the ones that are staying out are 25 through 29, 31, 71 and 72, and Defendant's 23." *Id*. at 219. Counsel did not object to Exhibit 73 purportedly being sent to the jury.

Appellant argues that once he objected to the introduction of the exhibit into evidence he was not required to renew his objection to the exhibit being given to the jury. In support, he relies on ***Commonwealth v. Canales***, 311 A.2d 572 (Pa. 1973). Therein, a police officer took notes of the defendant's oral confession. The notes were not verbatim nor were they signed by the defendant. The officer testified regarding the confession, and used the notes to refresh his recollection. The Commonwealth did not initially offer the notes into evidence, although they were marked as an exhibit.

Nonetheless, the court admitted the notes into evidence over an objection. The notes were unequivocally sent with the jury during its deliberations. The ***Canales*** Court ruled that the officer was properly

- 15 -

permitted to refresh his recollection with the notes but that the notes could not be introduced into evidence. It continued that since the exhibit should not have been admitted into evidence, it was improper for the jury to receive the notes. The High Court added that the jury's receipt of the notes also violated then-Rule 1114, which prohibited transcripts from being supplied to the jury. The **Canales** Court reasoned that the notes "were nothing more than his courtroom testimony reduced to writing—in effect, a transcript of his trial testimony." **Canales**, **supra** at 575. The Court also expressly declined to adopt the Commonwealth's waiver argument. It set forth that defense counsel did not have to object to the notes going to the jury because counsel objected to their admission.

Appellant continues that Exhibit 73 could not have been properly introduced into evidence because Dr. Roslonski was available and able to testify from his memory. He further contends that showing the jury the exhibit violated Pa.R.Crim.P. 646. That rule provides in pertinent part, "During deliberations, the jury shall not be permitted to have: (1) a transcript of any trial testimony; (2) a copy of any written or otherwise recorded confession by the defendant[.]" Pa.R.Crim.P. 646(C)(1)-(2). Lastly, Appellant asserts that, since the doctor's notes contained an admission, it cannot be harmless error for the court to have given the jury the exhibit.

The Commonwealth responds that nothing in the record supports Appellant's contention that the jury actually viewed the exhibit. It highlights that when the trial court and counsel were discussing which exhibits would and would not go to the jury, trial counsel never objected to submission of Exhibit 73. The Commonwealth maintains that counsel did not object because the exhibit was not among the documents that the court possessed that were to be distributed to the jury. It adds that counsel's lack of an objection also waives the contention on appeal.

In addition, the Commonwealth submits that the exhibit did not contain a confession, but only an inculpatory statement. According to it, an inculpatory statement that does not acknowledge all the elements of the crime is distinguishable from a confession and, thus, there would have been no error in submitting the exhibit to the jury. Finally, the Commonwealth contends that even if the jury did view the evidence and the court improperly provided it to the jury, any error was harmless. It points out that Officer Gregory and Dr. Perry both testified that Appellant had told them that he was the driver.

We find that the record does not support Appellant's premise, *i.e.*, that the court actually gave the jury the exhibit. There is no evidence in the record that Exhibit 73 was admitted into evidence or given to the jury. Appellant's argument hinges on the court's silence regarding Exhibit 73 when discussing which admitted exhibits would go out with the jury. Trial

counsel specifically stated on the record that he had no objection to the documents that were given to the jury. Thus, even if the exhibit were somehow included among the admitted exhibits provided to the jury, the issue is waived.

In this respect, the instant case is readily distinguishable from *Canales*. Here, the exhibit was not explicitly admitted into evidence. The trial court expressly stated it would defer ruling on admission of the exhibit, but never returned to the question. Therefore, the exhibit was not improperly admitted into evidence. Moreover, where, as here, trial counsel was explicitly asked if he objected to the submission of certain admitted exhibits and he did not, counsel's failure to object does waive the matter. Indeed, a timely objection is needed precisely to avoid the situation where it is uncertain whether a piece of evidence is being turned over to the jury. Had counsel objected, we would be certain that the exhibit was being given to the jury. Absent the objection, there is no record support that the exhibit was provided to the jury and it is almost certain that Exhibit 73 was not included among the documents being discussed. Since Appellant has not established that the exhibit was actually viewed by the jury and he did not object when asked about the exhibits that were given to the jury, his issue fails.

The final claim Appellant levels on appeal is that the trial court erred in declining to exclude Corporal Carrick's testimony that was inconsistent with

his expert report. Corporal Carrick had prepared an expert report that was admitted into evidence. In that report, he expressed his opinion that the point of impact between the truck and the utility pole was the right side roof of the vehicle. During direct examination, he did not testify that his opinion had changed. On cross-examination, Corporal Carrick again acknowledged that his report set forth that the right side roof of the truck impacted the utility pole; however, he also testified for the first time that his opinion had changed. At that time, he did not detail his change in opinion nor did defense counsel explore this change in detail.[7] Corporal Carrick also had not issued a supplemental report.

---

[7] The entire relevant exchange between trial counsel and Corporal Carrick was as follows.

> Defense counsel: . . . . I think you indicated in your conclusions on page nine of your report that it appears the pole was struck by the right side roof area of the truck?
>
> Corporal Carrick: Correct.
>
> Defense counsel: And is that—is that your opinion today?
>
> Corporal Carrick: Today it is not.
>
> Defense counsel: It's not?
>
> Corporal Carrick: Correct.
>
> Defense counsel: Is there any—did you file a supplemental? Did you reach another conclusion?

*(Footnote Continued Next Page)*

The trial court, not counsel, then undertook an extensive and detailed questioning of Corporal Carrick with respect to his new opinion after the Commonwealth finished its redirect examination. At the conclusion of the court's questioning, Appellant asked that the court exclude the testimony since the Commonwealth did not disclose this latter opinion. The Commonwealth acknowledged being aware of Corporal Carrick's change of opinion, but never disclosed this fact to defense counsel. *See* N.T., 8/28/13, at 117-118. Appellant maintains that the Commonwealth committed a discovery violation and that this violation precluded him from adequately preparing to examine Corporal Carrick.

*(Footnote Continued)* ──────────

> Corporal Carick: I did not. Nothing was on—written down, no, sir.
>
> Defense counsel: So you didn't file a supplemental report to your initial report?
>
> Corporal Carrick: Correct.
>
> Defense counsel: But in the conclusion where you say that the pole was struck by the right side roof area, that's no longer your conclusion?
>
> Corporal Carrick: Correct. That was based on what I had at the scene and what I thought at the time and the dynamics of the vehicle.

N.T., 8/28/13, at 85-86. Defense counsel did later briefly cross-examine Corporal Carrick about whether he looked for woodchips on the roof of the truck to determine the point of impact. *Id*. at 104-105.

Unlike civil cases, there are no specific procedural rules governing expert reports in criminal cases aside from Pa.R.Crim.P. 573, which relates to discovery. The rule requires the Commonwealth to turn over the results of expert opinions in its possession or control. Specifically, Pa.R.Crim.P. 573(B)(1)(e) reads:

> (1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.
>
>     . . . .
>
> (e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;

Additionally, Pa.R.Crim.P. 573(D) provides that both parties have a continuing duty to disclose evidence that is requested prior to trial that is subject to disclosure. In the instant case, Appellant requested discovery, including any expert information and reports. The Commonwealth provided discovery materials that included Corporal Carrick's report. However, it never disclosed that Corporal Carrick had altered his opinion.

Although there are no rules of procedure in criminal cases precisely governing expert reports, it cannot be asserted that either the Commonwealth or a defendant has *carte blanche* to allow an expert to testify beyond the information contained in his or her report. To hold

otherwise would eviscerate the requirement that reports be disclosed. In *Commonwealth v. Stith*, 644 A.2d 193 (Pa.Super. 1994), this Court discussed the civil rules in the context of a criminal case. There, the appellant conceded that no criminal case law discussed the proper remedy when "the Commonwealth introduces expert testimony exceeding the scope of an expert report." *Stith*, *supra* at 197.

Stith relied on Pa.R.C.P. 4003.5(c), and civil jurisprudence governing expert reports to argue that an expert is not permitted to testify beyond the scope of his report. Rule 4003.5(c) states in pertinent part,

> (c) To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings ... his direct testimony at trial may not be inconsistent with or go beyond the fair scope of his testimony in the discovery proceedings as set forth in his ... separate report.... However, he shall not be prevented from testifying as to facts or opinions on matters on which he has not been interrogated in the discovery proceedings.

Pa.R.C.P. 4003.5(c). In *Stith*, however, this Court concluded that the expert did not testify beyond the fair scope of his report. *Stith*, *supra* at 198. Instantly, there is no dispute that Corporal Carrick testified differently and beyond the scope of his report. Further, in light of the Commonwealth's repeated acknowledgment that it knew Corporal Carrick no longer held the opinion stated in his report regarding the point of impact, we agree a discovery violation occurred.

Pursuant to Pa.R.Crim.P. 573(E), the trial court has a variety of options at its disposal where a discovery violation exists. "[T]he court may

order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances." Pa.R.Crim.P. 573(E); **Commonwealth v. Hemingway**, 13 A.3d 491, 502 (Pa.Super. 2011).

Here, the court not only permitted but elicited the testimony in question. It then held that, because the initial disclosure that Corporal Carrick no longer held the view that the roof of the truck was the point of impact on the utility pole occurred on cross-examination, his later extensive testimony was permissible. In doing so, it relied on **Commonwealth v. Harris**, 703 A.2d 441 (Pa. 1997).

In **Harris**, the defendant was found guilty of murder and other crimes after he shot and killed Owen Edwards. Edwards was armed at the time of the killing with a .380 caliber handgun. A police expert, Officer Alan Jackson, testified that the victim did not fire the gun on that date because there was lint present in the barrel of the gun. A written report by a different officer also indicated that certain bullet specimens were unsuitable for comparison. Officer Jackson had testified in another trial consistently with that report. However, at Harris' trial, he opined on cross-examination that he had been able to compare one of the specimens and it had not been fired from the victim's weapon.

Harris argued that the officer's testimony was contrary to that in his written report and that the Commonwealth violated discovery and its duty to disclose this information. The *Harris* Court determined that no discovery violation occurred because the officer's testimony came on cross-examination and the Commonwealth did not ask the officer if he had changed his opinion. The Court expressly set forth that "the record does not establish that the evidence was in the 'possession and control of the attorney for the Commonwealth[.]'" *Id*. at 448. It also added that Harris could not establish prejudice because he did not adopt a self-defense theory based on the victim having fired his gun.

The Commonwealth echoes the trial court's rationale and relies on *Harris*. In addition, it argues that Appellant's defense hinged on the identity of the driver and that Corporal Carrick's report and testimony assumed Appellant was the driver. It highlights that Officer Gregory, Mr. Sullenberger, Kevin Roles, Dr. Perry, and Dr. Roslonski all testified regarding Appellant being the driver. The Commonwealth adds that Appellant's own expert testified that his own analysis of who was driving was not altered by Corporal Carrick's testimony that differed from his report. Indeed, Appellant's expert, Mr. Laino, dismissed both Corporal Carrick's report and testimony because it was not based on an independent analysis.

A discovery violation and testimony exceeding the scope of the expert's report, as a result of court questioning, do not automatically

command a new trial. Appellant still must establish that the introduction of the expert testimony caused him prejudice to the degree that it affected his trial strategy or likely affected the outcome of the proceedings. *Commonwealth v. Hood*, 872 A.2d 175 (Pa.Super. 2005); *Commonwealth v. Causey*, 833 A.2d 165, 171 (Pa.Super. 2003); *see also Commonwealth v. Henry*, 706 A.2d 313 (Pa. 1997) (assuming *arguendo* that expert testimony exceeded the scope of expert's report did not result in a successful ineffective assistance of counsel claim where counsel failed to object because there was overwhelming evidence of guilt).

The trial court and Commonwealth's reliance on *Harris* is misplaced because the Commonwealth admitted it was aware that Corporal Carrick had changed his opinion and the testimony objected to was elicited by the trial court and not by defense counsel in an attempt to discredit the officer. However, we agree that Appellant cannot establish prejudice.

Instantly, Appellant's own expert reviewed Corporal Carrick's written report and heard his different in-court testimony. He opined that neither of the conclusions reached by Corporal Carrick affected his own expert opinion that Appellant's son was driving. Furthermore, as it relates to preparation, Corporal Carrick's testimony in response to the court's questioning was consistent with the conclusion reached by Mr. Sullenberger. Thus, defense counsel was already prepared to rebut that testimony. We acknowledge that based on Corporal Carrick's change in stance, evidence was introduced

buttressing Mr. Sullenberger's testimony as to the point of impact. However, in light of Appellant's own admissions to two doctors and Officer Gregory, as well as Kevin Roles' testimony, we cannot agree that jury would have determined that Appellant was not the driver.

For the aforementioned reasons, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/8/2015