J-S60032-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RONALD DAVIS | |
| Appellant | No. 397 EDA 2015 |

Appeal from the Judgment of Sentence January 9, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0003650-2013

BEFORE:  BENDER, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED DECEMBER 30, 2015**

Ronald Davis appeals from the judgment of sentence entered January 9, 2015, in the Montgomery County Court of Common Pleas.  Davis was sentenced to an aggregate term of four and one-half to nine years' imprisonment, following his jury conviction of burglary, criminal conspiracy, and receiving stolen property ("RSP").[1]  Contemporaneous with this appeal, Davis's counsel seeks to withdraw from representation and has filed an **Anders** brief.[2]  The **Anders** brief identifies five issues for our review, including, a challenge to the trial court's denial of a pre-trial motion and an evidentiary ruling, and claims of prosecutorial misconduct during the

---

[1] **See** 18 Pa.C.S. §§ 3502(a)(2), 903(a)(1), and 3925(a), respectively.

[2] **See Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981).

Commonwealth's closing arguments. For the reasons set forth below, we affirm the judgment of sentence and grant counsel's petition to withdraw.

The facts relevant to this appeal are as follows. On March 8, 2013, Marshauna Hinton entered her home on Locust Street in Norristown, Montgomery County, and found two men inside the residence. She promptly fled and called police. Hinton later identified co-defendant, Justin Johnson, from a photo line-up, and he was arrested that same day. Johnson admitted his involvement, and informed the police that he and Davis had committed a string of burglaries in Norristown in early 2013, including the one at Hinton's home. Davis was initially charged on March 21, 2013, with the Hinton burglary. However, that complaint was withdrawn and a revised complaint was filed on April 15, 2013, charging Davis with numerous crimes, 68 counts in all, including robbery, burglary, RSP, and conspiracy, for the 2013 Norristown burglaries.

Davis was originally represented by the Public Defenders' Office. However, on August 16, 2013, the Defenders' Office was permitted to withdraw, because they also represented Davis's co-defendant, and conflict counsel was appointed. On September 9, 2013, Davis filed a petition for writ of *habeas corpus*. The court conducted a *habeas* hearing on October 11, 2013, and granted the motion in part, dismissing several charges. That same day, Davis filed an *omnibus* pre-trial motion seeking both suppression of evidence recovered during execution of a search warrant, and severance of the charges for crimes committed at distinct locations. On November 4,

2013, Davis filed an amended pre-trial motion, which included an additional claim seeking suppression of his identification.

A suppression hearing was held on January 29, 2014. On April 29, 2014, the trial court entered an order denying Davis's motion to suppress. The next day, the court granted Davis's request to sever the charges, and ordered that the crimes committed at different locations would be tried separately. *See* Order, 4/30/2014. The Hinton burglary case remained on the court's standby trial list until September of 2014.

On September 2, 2014, Davis filed a motion seeking dismissal of those charges based on a violation of Pa.R.Crim.P. 600. Following a hearing that same day, the court denied the Rule 600 motion, and proceeded directly to a jury trial. On September 4, 2014, the jury acquitted Davis of one count of robbery,[3] but, as noted above, found him guilty of burglary, conspiracy and RSP.

Sentencing was deferred on the instant matter. On December 1, 2014, Davis and the Commonwealth entered into a negotiated plea agreement with respect to the outstanding charges. Davis entered a guilty plea to two counts of conspiracy and one count of attempted burglary, in exchange for which the Commonwealth *nolle prossed* the remaining charges.

---

[3] *See* 18 Pa.C.S. § 3701(a).

He was sentenced that same day to three concurrent terms of two and one-half to five years' imprisonment.

On January 9, 2015, Davis was sentenced in the present case to a term of two and one-half to five years' for burglary, and a consecutive term of two to four years' for criminal conspiracy. The trial court ordered the aggregate four and one-half to nine year sentence run consecutive to the sentence imposed following Davis's guilty plea.[4] This timely appeal follows.[5]

When counsel files a petition to withdraw and accompanying *Anders* brief, we must first examine the request to withdraw before addressing any of the substantive issues raised on appeal. *Commonwealth v. Bennett*, 124 A.3d 327, 330 (Pa. Super. 2015). Here, our review of the record

---

[4] The guilty plea charges are not included in this appeal.

[5] On February 10, 2015, the trial court ordered Davis to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On March 2, 2015, counsel complied with the court's directive by serving the trial court with a statement of his intent to file an *Anders* brief pursuant to Pa.R.A.P. 1925(c)(4). Thereafter, Davis filed several *pro se* objections to counsel's statement, which this Court forwarded to counsel. *See Commonwealth v. Jette*, 23 A.3d 1032, 1044 (Pa. 2011) ("[T]he proper response to any *pro se* pleading is to refer the pleading to counsel, and to take no further action on the *pro se* pleading unless counsel forwards a motion.").

On April 23, 2015, counsel filed a petition seeking permission to withdraw **before** filing an *Anders* brief, based on his belief that Davis intended to assert his ineffectiveness. Davis filed a *pro se* objection to counsel's petition, and this Court denied the petition by order entered May 26, 2015. Thereafter, counsel filed the *Anders* brief which is presently before us.

reveals counsel has substantially complied with the requirements for withdrawal outlined in **Anders**, **supra**, and its progeny. Specifically, counsel requested permission to withdraw based upon his determination that the appeal is frivolous,[6] filed an **Anders** brief pursuant to the dictates of **Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009), furnished a copy of the **Anders** brief to Davis and advised Davis of his right to retain new counsel or proceed *pro se*. **Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*). Moreover, our review of the record reveals no correspondence from Davis supplementing the **Anders** brief. Accordingly, we will proceed to examine the record and make an independent determination of whether the appeal is wholly frivolous.

The first issue identified in counsel's **Anders** brief challenges the trial court's denial of Davis's motion to dismiss the charges based on a violation of his speedy trial rights pursuant to Pa.R.Crim.P. 600.

_____

[6] We note that counsel failed to file a separate petition to withdraw, but rather, included his request in the **Anders** brief. As a panel of this Court explained in **Commonwealth v. Fischetti**, 669 A.2d 399 (Pa. Super. 1995),

> Although we believe the more desirable practice would be to submit a separate withdrawal request to the court, we ... treat counsel's [request] in the brief itself as such a request. Consequently, we find that counsel's motion is properly before this Court for review[.]

**Id.** at 400 (citation and internal punctuation omitted).

Our review of a Rule 600 ruling is well-established:

"In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." Further, we review "the facts in the light most favorable to the prevailing party." Our scope of review is "limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court." The Commonwealth has the burden of establishing by a preponderance of the evidence that it exercised due diligence throughout the prosecution.

***Commonwealth v. Roles***, 116 A.3d 122, 125 (Pa. Super. 2015) (internal citations omitted).

Rule 600 protects a defendant's right to a speedy trial. It provides, in relevant part:

(A)  Commencement of Trial; Time for Trial

* * * *

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

* * * *

(C) Computation of Time

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

* * * *

(D) Remedies

(1) When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be

dismissed with prejudice on the ground that this rule has been violated. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

Pa.R.Crim. 600.

In considering whether a defendant has been brought to trial within the time constraints of Rule 600, a trial court must first determine the "mechanical run date," which, pursuant to Subsection (A)(2)(a), is 365 days after the criminal complaint is filed. ***Commonwealth v. Goldman***, 70 A.3d 874, 879 (Pa. Super. 2013), *appeal denied*, 85 A.3d 482 (Pa. 2014).

Nevertheless,

[a] defendant, however, is not automatically entitled to discharge under Rule 600 where trial starts more than 365 days after the filing of the complaint. Rather, Rule 600 "provides for dismissal of charges only in cases in which the defendant has not been brought to trial within the term of the adjusted run date, after subtracting all excludable and excusable time." The adjusted run date is calculated by adding to the mechanical run date, *i.e.,* the date 365 days from the complaint, both excludable and excusable delay.

Excludable time includes delay caused by the defendant or his lawyer. Concomitantly, excusable delay occurs where the delay is caused by "circumstances beyond the Commonwealth's control and despite its due diligence." "Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth."

Additionally, when considering Rule 600, we remain cognizant that Rule 600 serves two purposes. While it is intended to protect a defendant's speedy trial right, it also protects society's interest in prosecuting crime. Accordingly, where "there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a

manner consistent with society's right to punish and deter crime."

*Roles*, *supra*, 116 A.3d at 125 (internal citations omitted).

At the Rule 600 hearing in the present case, Davis argued the mechanical run date was March 21, 2014, 365 days after the **first** criminal complaint was filed. The Commonwealth asserted, however, the Rule 600 time began to run on the date the second complaint was filed, that is, April 15, 2013. Accordingly, it asserted the mechanical run date was April 15, 2014. The trial court agreed with the Commonwealth, as do we.

In *Commonwealth v. Peterson*, 19 A.3d 1131 (Pa. Super. 2011) (*en banc*), *aff'd*, 44 A.3d 655 (Pa. 2012), an *en banc* panel of this Court considered how to calculate the mechanical run date when the Commonwealth files an initial complaint, which it later withdraws before filing a second complaint based on the same criminal incident. The panel explained:

> [T]he Commonwealth must exercise due diligence **before** the withdrawal of an original complaint; consequently, the proper focus of the trial court when two identical complaints are at issue should be on whether the Commonwealth exercised due diligence in prosecuting the original complaint, not on whether it exercised due diligence in re-filing the second complaint. Where the Commonwealth exercises due diligence in prosecuting the original criminal complaint, the time period between the dismissal of the first complaint and the re-filing of the second complaint is irrelevant for purposes of Rule 600 and the Commonwealth is only required to re-file within the applicable statute of limitations. Such a holding is consistent with the purpose of Rule 600.

*Id.* at 1141.

Here, Norristown Police Detective David Crawford testified, during the Rule 600 hearing, that he filed the initial complaint based on charges related solely to the Locust Street burglary. *See* N.T., 9/2/2014, at 24-25. He explained he later withdrew that complaint "so that all of the cases that [he] believed [Davis] was involved in with his co-defendant could be put together as one Complaint." *Id.* at 25. The second complaint, which included charges related to multiple burglaries at several locations, was filed less than one month later, on April 15, 2013. The trial court concluded that the Commonwealth's withdrawal of the first complaint, and refiling of the second complaint, "was not an attempt in any way to avoid Rule 600 implications, but was, in fact, in order to try to reduce judicial delay [and] bring all of the charges together in an expedient fashion believing that they could, in fact, be joined." *Id.* at 82.[7] Further, our review reveals nothing in the record to the contrary. Accordingly, we agree the "mechanical run date" in the present case was properly determined to be April 15, 2014.

Our analysis does not end there however because trial did not begin until September 2, 2014, 140 days past the "mechanical run date." Therefore, we must consider whether excludable time and excusable delay

---

[7] We note the trial court did not file an opinion following the Rule 600 hearing.

- 9 -

warranted an adjusted run date after the trial date. With regard to this analysis, the trial court found the following:

> Between [April 15, 2013,] and today the Court simply finds that the Commonwealth acted with due diligence. There were certain periods of excludable time relating to either defense continuances, defense reasons, or the Court considering pretrial matters and having a series of hearings and any kind of court backlog in getting the case back in.

*Id.* at 82-83. Furthermore, the trial court rejected Davis's contention that the delay caused by the conflict with the Public Defenders' representation of both Davis and his co-defendant should be attributed to the Commonwealth. *Id.* at 83. The court specifically concluded it is not the Commonwealth's obligation to notify the court if there is a dual representation issue. *Id.*

Our review of the certified record, and the transcript from the Rule 600 hearing, reveals the following: (1) a 16-day delay resulting from a defense request continuance (7/8/2013 to 7/24/2013); (2) a 27-day administrative delay resulting from the trial court's recusal (11/7/2013 to 12/4/2013); (3) a 91-day delay, during which the trial court considered Davis's pretrial motions (1/29/2014 to 4/30/2014); and (4) an 89-day delay while the case remained on the court's standby trial list (6/5/2014 to 9/1/2014).[8] These excludable and excusable delays extended the run date 223 days. Therefore, we find no abuse of discretion on the part of the trial court in

---

[8] *See* N.T., 9/2/2014, at 64-65 (trial court explaining the case remained on the stand-by list "because of [the] court's schedule").

denying Davis's motion to dismiss the charges based on a violation of Rule 600, and agree with counsel's assessment that this claim is frivolous.

Next, the **Anders** brief presents a claim that the trial court abused its discretion when it permitted the Commonwealth to introduce into evidence a copy of a pawn shop receipt, rather than require it to produce the original receipt as mandated by Pennsylvania Rule of Evidence 1002.[9]

Our review of a trial court's ruling concerning the admission of evidence is well-settled:

> Admission of evidence rests within the discretion of the trial court, and we will not reverse absent an abuse of discretion. **Commonwealth v. Washington,** 63 A.3d 797, 805 (Pa. Super. 2013). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." **Commonwealth v. Martinez,** 917 A.2d 856, 859 (Pa. Super. 2007).

**Commonwealth v. Kinard**, 95 A.3d 279, 284 (Pa. Super. 2014) (*en banc*).

By way of background, we note Johnson entered a guilty plea for his role in the Hinton burglary and testified for the Commonwealth at Davis's trial.[10] He testified that he and Davis fled to Davis's house after the homeowner confronted them at the Hinton burglary. Johnson and Davis then agreed to go to "Lou's jewelry store on 69th Street" in Philadelphia, a

_____

[9] We have reordered Davis's claims for purposes of disposition.

[10] **See** N.T., 9/3/2014, at 140-142.

- 11 -

pawn shop, to sell some of the items they stole. N.T., 9/3/2014, at 156. However, Johnson testified he never made it to the pawn shop because he was arrested. *Id.* at 157. The Commonwealth then called David Wilson, an employee at Lou's Jewelry, to testify. Wilson explained the procedure by which the store buys jewelry from customers. Specifically, he described how the purchase numbers on the receipts are cross-referenced with the seller's driver's license. *Id.* at 212-213. To that end, Wilson produced a copy of a receipt, which showed that his employer purchased a diamond ring from Davis at 2:51 p.m. on March 8, 2013.[11] Davis objected to the admission of the photocopy, contending the original receipt was required. *Id.* at 213, 219. The trial court overruled the objection.

Rule 1002 mandates that "[a]n original writing … is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. 1002. To that end, Rule 1003 permits a party to admit a duplicate "to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Pa.R.E. 1003.

Here, the trial court determined that the receipt "is something that is kept in the normal course of business and the authenticity is not in dispute

---

[11] A diamond ring was among the items stolen in the Locust Street burglary. *Id.* at 109.

- 12 -

at this stage." N.T., 9/3/2014, at 219. We find no reason to disagree. Moreover, we note that, in addition to the copy of the receipt, the Commonwealth introduced the "customer data sheet" cross-referenced with the ring, which identified Davis as the seller. *Id.* at 223-225, Exhibit C-9. Accordingly, we agree this claim is frivolous.

The final three issues identified in the **Anders** brief assert prosecutorial misconduct during closing arguments. Specifically, Davis contends the prosecutor: (1) mischaracterized the content of an affidavit; (2) mischaracterized the standard of beyond a reasonable doubt; and (3) summarized a timeline of the events, which was not supported by the evidence. **See Anders**' Brief at 17-19, 20-24.

When considering a claim of prosecutorial misconduct,

> [o]ur standard of review … is limited to whether the trial court abused its discretion. In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one. Not every inappropriate remark by a prosecutor constitutes reversible error. A prosecutor's statements to a jury do not occur in a vacuum, and we must view them in context. Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict.

**Commonwealth v. Helsel**, 53 A.3d 906, 920 (Pa. 2012) (citation omitted).

Further, we note that the prosecutor's closing "statements are unobjectionable if they are based on the evidence or proper inferences therefrom, or represent mere oratorical flair." **Commonwealth v. Tedford**, 960 A.2d 1, 33 (Pa. 2008) (citation omitted). When a defendant challenges

the Commonwealth's closing, the "comment must be evaluated in the context in which the comment was made." ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1181 (Pa. 2011) (citation omitted).

First, Davis challenges the prosecutor's comments regarding Johnson's post-arrest affidavit. By way of background, when Johnson was first arrested, he admitted his involvement in the burglary and identified Davis as his co-conspirator. However, on April 8, 2013, he signed a typed, notarized statement, in which he attested the following:

> I Justin Johnson made statements to the Norristown police about myself and Ronald Davis and that I dont remember making because I was high off P.C.P. and cocaine at the time of my arrested. Everything i said in my statement is not true. I would never admit to anything I did not do and everything i said about Ronald Davis in my statement is not true. Im doing this on my own free will . Nobody is making me do this. In my Affidauit I was arrested with cocaine that I was high off of at the time along with p.c.p. I dont remember admitting to any robbery or any burglarys at all. And everything in my statement about Ronald Davis is not true. I never did those burglarys. Those statements are not true I was high at the time and the cops tricked me.

N.T., 9/3/2014, at 157, Exhibit C-7 (spelling and punctuation errors in original). Johnson later explained, however, that Davis typed the statement for him, and he signed it only because he was "scared" of Davis. ***Id.*** at 187, 203.

During closing arguments, the prosecutor made the following comments:

> And then we have this affidavit that [Johnson] wrote – I'm sorry, that he testified to that Ronald Davis, the defendant,

> wrote and had him sign. And so this selfish person who looks out for Number 1 at all times, at all costs, despite all risks, in the first sentence of his statement says Ronald Davis didn't do it. And then one of the last things he says is, don't forget, the defendant didn't do it.
>
> So this person who is only interested in himself apparently writes this affidavit, according to the defense, and the first thing he does is defend Ronald Davis and say he didn't do it. …

N.T., 9/4/2014, at 133. Davis objected, claiming the prosecutor mischaracterized the content of the affidavit. The trial court immediately instructed the jury, "It is your recollection that will control. Not the attorney's recollection of evidence, but your recollection of evidence that will control." *Id.*

Davis is entitled to no relief. Although we agree Johnson's exculpation of Davis was not the "first thing" Johnson stated in his affidavit,[12] we find that the prosecutor's comments were "mere oratorical flair." *Telford*, *supra*, 960 A.2d at 33. More importantly, the court immediately instructed the jury that their "recollection of evidence [] will control[,]"[13] and "[t]he jury is presumed to have followed the court's instructions." *Chmiel*, *supra*, 30 A.3d at 1147. Accordingly, we agree this contention is frivolous.

Davis also argues the prosecutor mischaracterized the standard of beyond a reasonable doubt.

During his closing argument, the prosecutor stated:

---

[12] *Anders* Brief at 18.

[13] N.T., 9/4/2014, at 133.

Every single one of you as reasonable people should have a pause about the evidence when you retire to deliberate. The question is not do you have a pause and that is, therefore, a reasonable doubt that the man who entered [] Locust Street with Justin Johnson was therefore somehow not guilty. The question is can you overcome it after examining and analyzing the evidence that's been presented to you during the course of this trial?

N.T., 9/4/2014, at 116. After the prosecutor, again, commented that the jury had to overcome an "initial pause," Davis objected, arguing that the correct standard is "hesitate" rather than "pause." *Id.* at 117. The trial court agreed that the prosecutor "might have been misstating the law of reasonable doubt," and immediately instructed the jury that "it will be the Court's statement as to the law that you will follow." *Id.* at 117-118, 199. *See also id.* at 168 (court instructed the jury "a reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in her or her own affairs.").

Here, the court clarified any misstatement by the prosecutor when it instructed the jury to follow its charge on the law during their deliberations. We reiterate: "The jury is presumed to have followed the court's instructions." *Chmiel*, *supra*, 30 A.3d at 1147. Accordingly, this claim is, too, frivolous.

Lastly, Davis asserts the prosecutor summarized a timeline of the events in the case which was not supported by the evidence. Specifically, he refers to the prosecutor's comments regarding the timeframe between the burglary and Johnson's arrest. The prosecutor stated:

> You're talking about at best about 15 minutes in total of time that this could have occurred based on when the burglary happened and Justin Johnson got arrested.

N.T., 9/4/2014, at 135-136.[14]

We find this issue is waived. "[T]he lack of a contemporaneous objection constitutes a waiver of any challenge to the prosecutor's closing remarks." *Commonwealth v. Rivera*, 983 A.2d 1211, 1229 (Pa. 2009) (citation omitted), *cert. denied*, 560 U.S. 909 (2010). Here, Davis failed to object to these comments either during or immediately after the prosecutor's closing arguments. Therefore, this challenge is waived.[15] *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Because we agree with counsel's assessment that Davis's appeal is wholly frivolous, we affirm the judgment of sentence and grant counsel's petition to withdraw.

_____

[14] We note the prosecutor made these comments to refute the defense's argument during opening remarks that Johnson sold the ring to Davis after the burglary, and Davis then sold it to the pawn shop. *See* N.T., 9/4/2014, at 134-135.

[15] We note that even if we were to address this claim, we would conclude that the prosecutor's statement was supported by the evidence. *See* N.T., 9/3/2014, at 154-155 (Johnson testified it took "[p]robably five minutes, not even, because we ran" to get from the Locust Street burglary to Davis's house); 160 (Johnson testified they were at Davis's house "about five minutes, five to 10 minutes[,]" and it took "[a]bout five minutes" for him then to get to his mother's house, where he was arrested).

Judgment of sentence affirmed. Petition to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2015