J. A25037/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
:
        Appellee : 
:
        v. : 
:
MAIKEL POULICZEK, : 
: Nos. 1061 EDA 2014
        Appellant : 1340 EDA 2014


Appeal from the Judgment of Sentence March 21, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0009772-2009, CP-51-CR-0009774-
2009, CP-51-CR-0013166-2010, CP-51-CR-0006021-2011

BEFORE: DONOHUE, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED DECEMBER 24, 2015**

Appellant, Maikel Pouliczek,[1] appeals from the judgment of sentence of

thirty-seven to eighty-one years' imprisonment entered in the Philadelphia

County Court of Common Pleas after a jury trial on the above captioned

cases. Appellant claims (1) the trial court erred in denying his Pa.R.Crim.P.

600 motion to dismiss the charges, (2) the court erred in denying his motion

for mistrial after the Commonwealth confronted its witness, Luis Gonzalez,

with a letter purporting to solicit Gonzalez's murder, (3) the court erred in

permitting the Commonwealth's witness, Barbara Zangerl, to testify about

---

[*] Former Justice specially assigned to the Superior Court.

[1] We have amended the caption to reflect the spelling of Appellant's name as
reflected in the record.

uncharged incidents of domestic abuse, (4) the court erred in denying his motion for mistrial after Zangerl referenced his arrest for an unrelated incident, (5) the evidence was insufficient to sustain his conviction for soliciting the murder of Gonzalez, (6) the evidence was insufficient to prove the date he assaulted Zangerl, and (7) the trial court erred in rejecting Appellant's guilty plea and ordering that he proceed to trial. We affirm the convictions, find an illegal sentence in CR-6021-2011, vacate the judgment of sentence, and remand for resentencing.

The procedural history of this appeal follows. On December 23, 2008, Appellant was charged in CR-9774-2009, with terroristic threats, simple assault, recklessly endangering another person, and intimidation of a witness.[2] Those charges arose from an incident involving Zangerl, his former wife, at their home. The following day, December 24th, Appellant was charged in CR-9772-2009 with simple assault, recklessly endangering another person, and terroristic threats[3] for attacking Zangerl, while the two were traveling in a car. The complaints and informations indicated the offenses in CR-9774-2009 occurred on October 3, 2008, and the offenses in CR-9772-2009 occurred on December 3, 2008.

---

[2] 18 Pa.C.S. §§ 2701(a), 2705, 2706(a)(1), 4952(a)(1).

[3] 18 Pa.C.S. §§ 2701(a), 2705, 2706(a)(1).

Appellant was incarcerated and housed in a Philadelphia County Correctional Facility.[4] Luis Gonzalez, a fellow inmate, reported that Appellant asked him to arrange the murder of Zangerl to prevent her from testifying against Appellant. On August 17, 2009, he was charged in CR-13166-2010 with solicitation of murder, terroristic threats, intimidation of a witness, retaliation against a witness, and obstruction of administration of law.[5] Subsequently, prison officials discovered a letter allegedly threatening the death of Gonzalez and referring to Gonzalez's adverse testimony against the author. An investigation into the letter indicated Appellant authored the letter. On March 1, 2011, Appellant was charged in CR-6021-2011, with solicitation of murder, terroristic threats, six counts of intimidation of a witness, and retaliation against a witness, and obstruction of administration of law.[6]

The four cases were consolidated.[7] Appellant filed a Pa.R.Crim.P. 600 motion seeking discharge, which the trial court denied. Immediately before

---

[4] As discussed below, Appellant was initially incarcerated on a separate matter.

[5] 18 Pa.C.S. §§ 902(a), 2502, 2706(a)(1), 4952(a)(1), 4953(a), 5101.

[6] 18 Pa.C.S. §§ 902(a), 2502, 2706(a)(1), 4952(a)(1)-(6), 4953(a), § 5101.

[7] The trial court, on March 11, 2011, granted the Commonwealth's motion to consolidate the charges in CR-9772-2009, CR-9774-2009, and CR-13166-2010. The trial court states that CR-6021-2011 was "linked" to the other cases on April 27, 2012. Appellant did not challenge the consolidation of the cases.

jury selection on January 7, 2014, the parties appeared before the court with a proposed guilty plea agreement. During the colloquy, and before entering his plea, Appellant asked to speak with a foreign embassy to determine whether he was eligible for immediate deportation. The court thereafter rejected the plea and ordered that jury selection begin and the case proceed to trial.

On January 23, 2014, the jury rendered its verdict. In CR-9772-2009 and CR-9774-2009, it found Appellant guilty of two counts each of terroristic threats and simple assault against Zangerl, but acquitted him of recklessly endangering another person and intimidation of a witness. In CR-13166-2010, it found Appellant guilty of solicitation of Zangerl's murder, retaliation against a witness, obstruction of the administration of law, but acquitted him of intimidation of a witness and terroristic threats. In CR-6021-2011, it found Appellant guilty of solicitation of Gonzalez's murder, two counts of intimidation of a witness,[8] and retaliation against a witness.

---

The Honorable Earl W. Trent initially presided over this matter until approximately November 30, 2012. The Honorable Gwendolyn N. Bright presided over the remaining pretrial matters, as well as trial and sentencing.

[8] In CR-6021-2011, the jury found Appellant guilty of two counts of intimidation of a witness under 18 Pa.C.S. § 4952(a)(2) and (a)(3). The jury, however, acquitted Appellant on two other counts under subsections (a)(1) and (a)(6). Two additional counts of intimidation of a witness under subsections (a)(4) and (6), were withdrawn.

The trial court, on March 21, 2014, sentenced Appellant to an aggregate thirty-seven to eighty-one years' imprisonment. The individual sentences in each case were: (1) in CR-9772-2009, one to two years' imprisonment each for terroristic threats and simple assault against Zangerl, concurrent to each other, but consecutive to the remaining sentences; (2) in CR-9774-2009, one to two years' imprisonment for terroristic threats and simple assault against Zangerl, concurrent to each other, but consecutive to the remaining sentences; (3) in CR-13166-2010, ten to twenty years' imprisonment for solicitation of Zangerl's murder, three and a half to seven years' imprisonment for retaliation against a witness, and one to two years' imprisonment for obstruction of justice, all consecutive; and (4) in CR-6021-2011, seven and a half to fifteen years' imprisonment for solicitation of Gonzales' murder, five and a half to fifteen years' imprisonment for intimidation of a witness (subsection (a)(2)), a five and a half to eleven years' imprisonment for intimidation of a witness (subsection (a)(3)), and a two to seven years' imprisonment for retaliation against a witness, all consecutive.

Appellant timely filed notices of appeal in each case and after receiving an extension of time, complied with the trial court's order to submit Pa.R.A.P. 1925(b) statements. The appeals were docketed separately in this Court, and this Court granted Appellant's application to consolidate.

Appellant presents the following questions for review:

[1.] Did the trial court err in denying the [A]ppellant's Motion to Dismiss Pursuant to Pennsylvania Rule of Criminal Procedure 600(a), and subsequent motions to reconsider that denial, where [A]ppellant's trials did not commence within 365 days of the filing of the complaints, and periods of delay in excess of 365 days were caused by the Commonwealth's failure to exercise due diligence?

[2.] Did the trial court err in denying [A]ppellant's request for a mistrial after the Commonwealth questioned Luis Gonzalez regarding [A]ppellant's alleged letter requesting that Mr. Gonzalez be killed (Commonwealth exhibit 42) because:

   i. The Assistant District Attorney testified and expressed her own opinion as to the truth and source of the letter in response to a question by Mr. Gonzalez, and

   ii. By showing it to Mr. Gonzalez, implicitly asked him to make an opinion as to its truth, both of which fundamentally invaded the province of the jury?

[3.] Did the trial court err in overruling [A]ppellant's objection and denying [A]ppellant's request for a mistrial after the Commonwealth questioned Luis Gonzalez regarding [A]ppellant's alleged letter requesting that Mr. Gonzalez be killed (Commonwealth exhibit 42) because it was outside of the scope of cross?

[4.] Did the trial court err[ ] in allowing complainant Zangerl to discuss other crimes evidence not raised on the Commonwealth's Motion *in Limine*, such as allegations of threats and physical violence which did not occur on October 3, 2008 or December 3, 2008, resulting in unfair prejudice to the [A]ppellant?

[5.] The trial court erred in denying [A]ppellant's motion for a mistrial where complainant Barbara Zangerl mentioned an independent arrest after the court's instruction not to, and where the comment suggested that [A]ppellant had been arrested for conduct outside of that charged.

- 6 -

[6.] Was the evidence sufficient to convict [A]ppellant of the charge of solicitation to commit murder (. . . Luis Gonzalez) where the document alleged to be solicitation was undated, vague, unsigned, and without a specified intended recipient?

[7.] Was the evidence sufficient to convict [A]ppellant of the charge of terroristic threats and simple assault (CP-51-CR-0009772-2009 and CP-51-CR-0009774-2009) where the bills of information correspond to the dates of the complaints, not any incident, and the complainant failed to testify as to when the incident occurred?

[8.] Did the court abuse its discretion and err in rejecting [A]ppellant's guilty plea because there was no valid or reasonable justification to do so after it was shown to be a knowing and voluntary plea and the court failed to place any such reasons on the record?

Appellant's Brief at 6-8.

Appellant first contends the trial court erred in denying his Pa.R.Crim.P. 600 motion to dismiss the charges. He focuses on the single delay due to the Commonwealth's request for a continuance on April 27, 2012. *Id.* at 27. He asserts that although the Commonwealth stated Zangerl was out of the country due to a death in the family, she appeared in the Philadelphia County Family Court on May 7, 2012. *Id.* Specifically, he relies on a Family Court docket entry which read:

> **07-May-2012 09:16:36 Case Continued** . . . .
>
> BOTH PARTIES PRESENT. PLTF WITH ATTORNEY. DEFT INCARCERATED. SEE LETTER IN FILE. CRIMINAL CASE PENDING. CONT'D TO 12/10/12 . . . .

Docket, *Zangerl v. Pouliczek*, 0809V8012, 2/25/13, at 3. Appellant also argues the death of Zangerl's new husband did not explain her absence. *Id.*

Specifically, he proffers exhibits showing her new husband died October 14, 2011, and notices of the distribution of the estate were published December 15, 2011. He thus argues the Commonwealth failed to exercise due diligence. *Id.* at 29. No relief is due.

The following precepts govern our review:

> "In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." Further, we review "the facts in the light most favorable to the prevailing party." Our scope of review is "limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court." The Commonwealth has the burden of establishing by a preponderance of the evidence that it exercised due diligence throughout the prosecution.

*Commonwealth v. Roles*, 116 A.3d 122, 125 (Pa. Super. 2015) (citations omitted).

Pennsylvania Rule 600[9] is designed to implement a defendant's constitutional right to a speedy trial and, *inter alia*, permits a defendant to seek dismissal of the charges if trial is not commenced within 365 days of the filing of a complaint. *See id.*; *Commonwealth v. Goldman*, 70 A.3d 874, 879 (Pa. Super. 2013), *appeal denied*, 85 A.3d 482 (Pa. 2014). The "mechanical" 365-day deadline, however, must be adjusted by the following:

> "Excludable time" is defined in [former] Rule 600(C) as the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant

---

[9] Because the complaints in this case were filed before July 1, 2013—the effective date of the current version of Rule 600—we apply the former version of the rule. *See Roles*, 116 A.3d at 124 n.4.

could not be apprehended because his whereabouts were unknown and could not be determined by due diligence; any period of time for which the defendant expressly waives Rule 600; and/or such period of delay at any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attorney; (b) any continuance granted at the request of the defendant or the defendant's attorney. "Excusable delay" is not expressly defined in Rule 600, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence.

*Commonwealth v. Hunt*, 858 A.2d 1234, 1241 (Pa. Super. 2004) (citations, footnote, and emphasis omitted). "If the defense . . . indicate[s] approval or acceptance of the continuance, the time associated with the continuance is excludable under Rule 600 as a defense request." *Id.* (citation omitted).

Instantly, the docket entries for April 27, 2012, listed the following disposition of the Commonwealth's request for continuance:

Advance Commonwealth request—Commonwealth witness will be out of town for months due to death in family; case can not go to trial on previously scheduled date of 4/30. **Defense stipulates time to next trial listing can be ruled extendable.** List next for jury trial on earliest possible date of December 3, 2012 in Rm. 1002 and for pretrial conference on 11/30/12 in Rm. 1002.

*See* Docket, CP-51-CR-0006021, 11/12/14, at 11 (emphasis added).

Thus, Appellant's argument on appeal ignores his counsel's assent to the continuance as "extendable" time. He presents no meaningful argument to distinguish the principle that defense counsel's assent is akin to a request

for a continuance that constitutes "excludable time." *See Hunt*, 858 A.2d at 1241. Accordingly, his reliance on the "excusable time" paradigm to complain that the Commonwealth failed to exercise due diligence is misplaced. *See id.* Further, Appellant does not argue the Commonwealth acted in bad faith when it requested the continuance or misrepresented Zangerl's whereabouts or the duration of her unavailability. There is no indication that Zangerl's affairs abroad permitted her to be available for an extended trial during the period of the challenged continuance.[10] Thus, no relief is due.

Appellant next contends the trial court erred in denying his request for a mistrial when the Commonwealth, on redirect examination, presented Gonzalez with a copy of the letter in which Appellant allegedly solicited another inmate to kill Gonzalez. He initially asserts the examination of Gonzalez with the letter was improper because the Commonwealth vouched for the source and truth of the contents of the letter, *i.e.*, that Appellant in fact solicited of Gonzalez's murder. Appellant's Brief at 30. He also asserts Gonzalez was incompetent to testify about the letter because he lacked

---

[10] We note Appellant indicates the Commonwealth introduced an exhibit purporting to be the Commonwealth's request for a continuance at the May 7, 2012 Family Court hearing. However, Appellant did not include that request in the certified record. Additionally, he does not indicate whether a hearing determining his Rule 600 motion was held, and neither the record nor his reproduced record contains a transcript of such a hearing. Accordingly, Appellant's arguments could also be deemed waived. *See Commonwealth v. Lopez*, 57 A.3d 74, 82 (Pa. Super. 2012).

personal knowledge of it before trial. *Id.* at 31-32. These issues have been waived.

As noted above, Gonzalez was a witness in CR-13166-2010 for the solicitation of Zangerl's murder, and the subject of the charges in CR-6021-2011 for solicitation, intimidation, and retaliation. At trial, the Commonwealth called Gonzalez as its first witness. During direct examination, the Commonwealth questioned Gonzalez regarding Appellant's alleged request to arrange Zangerl's murder, which Gonzalez had reported to prison officials and a police detective. N.T. Trial, 1/8/14, at 31. Gonzalez testified that he "made up a story" that Appellant "wanted me to do something to somebody" and emphasized "[i]t was all a lie."[11] *Id.*

Appellant's counsel cross-examined Gonzalez to bolster the credibility of Gonzalez's trial testimony. Gonzalez repeated hat he fabricated his report

---

[11] Specifically, the Commonwealth, during direct examination confronted Gonzalez with his prior, signed statement to Detective Joseph Baird. N.T. Trial, 1/8/14 at 33. Gonzalez admitted he told the detective that "a guy wants me to get their girlfriend or a guy dealt with." *Id.* at 35. However, he again explained he made up his prior statement because Appellant was annoying him. *Id.* at 37. Gonzalez recanted his prior statements that Appellant "told [him] he wanted somebody to get hurt" and "it[ was] his wife." *Id.* at 44-45. He also recanted his statement that Appellant offered him "$50,000 to do the job." *Id.* at 50. The Commonwealth obtained a ruling that Gonzalez was an adverse witness and elicited his admission that his preliminary hearing statement was consistent with his prior statement to Detective Baird. *Id.* at 77-78, 94.

to the detective because he did not like Appellant. *Id.* at 101. Gonzalez insisted that Appellant did not solicit him to murder his wife. *Id.* at 101.

On redirect examination by the Commonwealth, the following exchange occurred:

> [Commonwealth]. Were you aware that one of the—
>
>> [Appellant's counsel]: I'm going to object. That's outside the scope of cross-examination.
>>
>> THE COURT: Overruled. I'll allow it.
>
> [Commonwealth]. Were you aware that one of the cases that's here today is for the allegations that [Appellant] solicited another inmate to murder you?
>
> [Gonzalez]. No, I didn't.
>
> [Commonwealth]. Is this the first time you're hearing this?
>
> [Gonzalez]. Yes, it is.
>
> [Commonwealth]. How does that make you feel to hear that?
>
>> [Appellant's counsel]: Objection.
>>
>> THE COURT: Overruled.
>>
>> You may answer.
>
> *    *    *
>
> [Gonzalez]. Very shocked. Murder me. Is there proof of that, ma'am?
>
> [Commonwealth]. Yes. Your Honor, if this witness could please be shown what's previously been marked as C-42 for identification.
>
> [Sidebar held off the record]

[Commonwealth]. . . . You indicated that you were shocked when I told you that this defendant put a murder hit out on you in custody. Why is that?

[Appellant's counsel]: Objection to the form of the question. A murder hit?

THE COURT: Well, overruled.

[Appellant's counsel]: Someone was hired to murder him.

THE COURT: Rephrase the question.

[Commonwealth]. Sir, when I asked you if you were aware that one of the allegations in this case is that this defendant solicited another inmate to have you murdered, you replied that you were shocked to hear that. Can you explain why?

\* \* \*

[Gonzalez]. This is news to me. I didn't even know my life was on a hit. I didn't know that ma'am. Now you try to kill me?

\* \* \*

[Commonwealth]. Sir, hearing this new information, are there any changes that you would have made to your testimony today had you known this information before taking the stand.

[Appellant's counsel]: I'm going to object to the testimony. I'm going to ask for a mistrial. May I see the Court in chambers?

*Id.* at 103-05. The trial court excused the jury for the day.

Appellant's counsel argued Appellant was entitled to a mistrial, noting that he objected because the "subject matter brought up by the district

- 13 -

attorney was not [a part] of cross-examination of this witness." **Id.** at 107. He asserted "what [the Commonwealth] did was [use] something that [it] should have brought out on direct examination to obviously upset the witness with the hopes now that he'll change his testimony, and I'm suggesting to the Court that that's improper redirect and to do so is inappropriate." **Id.** The trial court denied the motion for mistrial. **Id.**

The following day, Gonzalez retook the stand for redirect examination, adopted his prior statement to Detective Baird, and asserted his trial testimony on direct and cross examination was false. N.T. Trial, 1/9/14, at 5-6. On recross-examination by Appellant's counsel, Gonzalez again admitted the falsity of the previous day's testimony, but asserted he "was coerced by [Appellant]." **Id.** at 7. Gonzalez further provided details regarding Appellant's alleged attempts to arrange for his wife's murder. **Id.** at 10-12, 19.

It is well settled that

> [i]ssues not raised to the trial court are waived and cannot be raised for the first time on appeal. "In order to preserve an issue for review, a party must make a timely and specific objection." Also, an appellant may not raise a new theory for an objection made at trial on his appeal.

**Commonwealth v. Duffy**, 832 A.2d 1132, 1136 (Pa. Super. 2003) (citations omitted); **see also** Pa.R.A.P. 302(a).

As the record reveals, Appellant's counsel requested a mistrial, arguing (1) the scope of redirect examination was beyond the scope of cross-

examination and (2) the Commonwealth should have presented the evidence during direct examination. N.T. Trial, 1/8/14, at 107. Appellant's present claims—that the prosecutor impermissibly "vouched" for the truth of the contents of the letter and Gonzalez was not competent to testify about the letter—were not fairly included in his request for a mistrial. Accordingly, those arguments are waived. **See Duffy**, 832 A.2d at 1136.

Appellant next contends that the above-recited exchange between the Commonwealth and Gonzalez constituted improper redirect examination. This issue falls within the scope of his objections and request for mistrial. **See id.**; N.T. Trial, 1/8/14, at 107. Therefore, we will address the merits of this claim.

It is well settled that:

> "[t]he scope of redirect examination is largely within the discretion of the trial court." "An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." "Moreover, when a party raises an issue on cross-examination, it will be no abuse of discretion for the court to permit re-direct on that issue in order to dispel any unfair inferences."

**Commonwealth v. Fransen**, 42 A.3d 1100, 1177 (Pa. Super. 2012) (*en banc*) (citations omitted).

Our review of the record reveals Appellant's counsel, on cross-examination, emphasized the incredibility of Gonzalez's prior statements implicating Appellant and bolstered the substance and credibility of his retraction. N.T. Trial, 1/8/14, at 101. As the trial court noted, the

Commonwealth's subsequent confrontation of Gonzalez with the letter purporting to solicit his murder tested the substance and credibility of the recantation emphasized during cross-examination. **See** Trial Court Op., 11/12/14, at 10. We discern no abuse of discretion in the trial court's rationale for overruling Appellant's objection and request for a mistrial based on the scope of redirect examination. **See Fransen**, 42 A.3d at 1177.

Appellant's fourth contention is that the trial court erred in permitting Zangerl to testify about incidents of domestic violence unrelated to the charged offense dates of October 3, 2008, and December 3, 2008. We have reviewed the entirety of Zangerl's trial testimony and find Appellant's counsel did not object on that basis.[12] **See** N.T. Trial, 1/9/14, at 62-63, 65, 67. Therefore, this claim is waived. **See** Pa.R.A.P. 302(a); **Duffy**, 832 A.2d at 1136.

Appellant next contends the trial court erred in refusing his request for a mistrial when Zangerl referenced Appellant's arrest on unrelated charges. The record provides the following context to this claim. Before Zangerl was called to testify, the Commonwealth sought to admit prior bad acts evidence, namely, that Appellant was arrested and charged with "threatening with a

---

[12] Although Appellant's counsel did object throughout the Commonwealth's direct examination of Zangerl, he did so to "the form of the question," **see, e.g.**, N.T., 1/9/14, at 64, "leading," **id.** at 66, and improper opinions or speculation in her responses, **id.** at 66.

firearm."[13]   N.T. Trial, 1/9/14, at 46.   The Commonwealth argued the evidence provided a history of the case because Zangerl had seen Appellant with the gun, which, in turn, explained "why she was threatened by [Appellant]."  *Id.*  Counsel for the Commonwealth and Appellant agreed that a motion to admit prior bad acts evidence was litigated before they became involved in this case.  *Id.* at 45-46.  The court observed there was no indication of other crimes evidence in the Commonwealth's motion *in limine* and ruled the testimony inadmissible.  The Commonwealth stated it would advise Zangerl not to mention that case.  *Id.* at 48-49.

However, the following exchange occurred during the Commonwealth's direct examination of Zangerl:

> [Commonwealth]:  Do you remember what drove you to the point that you decided to contact the police?
>
> [Zangerl]:  Yes.  It was almost a year later [Appellant] had been arrested for an independent event and it was the first two days where he wasn't constantly around.  I bailed him out—
>
> [Appellant's counsel]:  Your Honor, may we see the Court at sidebar . . . .

*Id.* at 68.

---

[13] We take notice that Appellant was charged with violations of the Uniform Firearms Act, simple assault, recklessly endangering another person, and terroristic threats in MC-51-CR-0049276-2008, but was acquitted.  The date of the not guilty verdicts in that case, August 13, 2009, was referenced by Appellant's counsel at trial.  *See* N.T. Trial, 1/8/14, at 99.  We also observe the Municipal Court case was filed on October 2, 2008.

At the sidebar conference, Appellant's counsel requested a mistrial because the testimony violated the court's *in limine* ruling and was "purely prejudicial." *Id.* at 68-69. The Commonwealth noted that Appellant's counsel raised the issue of Appellant's prior arrest and acquittal when cross-examining Gonzalez. *Id.* at 69; *see also* N.T. Trial, 1/8/14, at 99. The Commonwealth stated it had complied with the trial court's order to caution Zangerl not to reference that matter. N.T. Trial, 1/9/14, at 69. Further, the Commonwealth asserted, "[I]t was not intentional or malicious." *Id.* The court denied the request for a mistrial. *Id.* at 70. Appellant's counsel stated he did not want a curative instruction. *Id.*

It is well settled that

> the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice.

*Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009) (citation and quotation marks omitted). This Court reviews an order denying a mistrial for an abuse of discretion. *Id.*

Instantly, the trial court observed the testimony was improper in light of its ruling. Trial Ct. Op., 11/12/14, at 12. However, it concluded the testimony "did not inure prejudice to Appellant such that it would deprive him of a fair trial." *Id.* We have reviewed the entire trial transcript and agree with the trial court that the passing reference to the arrest was not so

prejudicial as to require the declaration of a mistrial. ***See Judy***, 978 A.2d at 1019.

Appellant next contends the letter found by prison officials was insufficient to sustain his convictions in CR-6021-2011 for solicitation of Gonzalez's murder and the related offenses. Appellant's Brief at 45-46. He asserts there was no "supporting evidence to connect" him to the document and thus prove each element of solicitation to commit Gonzalez's murder. ***Id.*** at 46. Appellant does not discuss the elements of the offense, but emphasizes that "the document was undated, vague, unsigned, and without a specific intended recipient." ***Id.***

Our standards of reviewing a challenge to the sufficiency of the evidence are well settled:

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict[-]winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part, or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

***Commonwealth v. Bohonyi***, 900 A.2d 877, 881-82 (Pa. Super. 2006) (citation omitted).

> Section 902 of the Crimes Code defines solicitation as follows:
>
> > A person is guilty of solicitation to commit a crime if with the intent of promoting or facilitating its commission he commands, encourages or requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime or which would establish his complicity in its commission or attempted commission.

18 Pa.C.S. § 902(a).

Instantly, the Commonwealth presented the following evidence regarding the letter purportedly soliciting the murder of Gonzalez. The letter was found during a search of a cell shared by Alexander Danazina and Antonio Peterson. Danazina denied knowing about the letter, where it was from, or why it was in his cell. N.T. Trial, 1/13/14, at 9, 12. He averred a prison official planted the letter during a search of his cell. *Id.* at 22.

Peterson also denied seeing the letter before its discovery by prison officials. *Id.* at 33. The Commonwealth confronted Peterson with his January 7, 2011 statement to Detective Christopher Casee. In that statement, Peterson alleged Danazina told him "the Iraqi boy in 32 cell was going to have someone tucked." *Id.* at 47. Peterson identified the "Iraqi boy" as "Mike," as having "a long name" beginning with a "P," and as the "only white guy" in "32 cell." *Id.* at 68-69. Peterson, on February 14, 2011,

identified a picture of Appellant as the individual he previously described.

*Id.* at 77.

> Detective Casee subsequently read the subject letter into the record:

> > Yo, I already hollad (sic) at that bitch before we went to court and he gave his word that he will say it's not me and he would not point me out and when we went to court all of a sudden bitch point me out in courtroom and testified against me one hour long. Real shit. That bitch was a whole hour on the stand. They already charge me with intimidating a witness. Yo, make sure your man make him sign a counter affidavit. Let main man write the affidavit with his own handwriting, you understand? And then send him out. I mean, you know how, fire rescue.[14] Point blank rats die slow. PP No. 868683. Yo, I do not know how to write his name. Luis Gonzalez. I think this is how as (sic) supposed to be written. Correct me when I'm wrong. PP number is correct. He is on X-1 cell 23. That I know for fact. Yo, I do not here (sic) much time. Yo, in the affidavit he went in my papers and made up that story up to get a deal. You feel me? Do you feel me? That rat shit is out of order. Loyalty over everything. Real recognize real. Kick back ASAP. Don't let me wait you I'm stressed.

*Id.* at 92.

Officer Kevin Dwyer was qualified as an expert in handwriting analysis. *Id.* at 116. Officer Dwyer obtained numerous documents seized from Appellant's cell under a search warrant, as well as the above letter. *Id.* at 118, 120. The officer compared the handwriting on the documents and concluded the letter was written by Appellant. *Id.* at 124.

---

[14] The Commonwealth previously elicited testimony that a "fire rescue . . . means somebody get hurt." N.T. Trial, 1/13/14, at 70.

Following our review, and mindful of the standard of review, we find no merit to Appellant's argument that the evidence was insufficient for the jury to find he authored the letter. The text of the letter provided circumstantial evidence that it was written after Appellant was charged with intimidation of a witness and Gonzalez testified against him at a court proceeding. Moreover, the phrase "rats die slow" was not so vague that the jury had to speculate regarding Appellant's intent. Similarly, there was evidence for the jury to infer that the letter was received by Danazina. Thus, no relief is due.

Appellant next challenges the sufficiency of the evidence in CR-9772-2009 and CR-9774-2009 related to threats and assaults against Zangerl. He argues Zangerl failed to specify when the incidents occurred and the Commonwealth's evidence did not prove the dates of the charges. Appellant's Brief at 47. For the reasons that follow, we find this issue waived.

Preliminary, we note the record reveals confusion regarding the dates of the offenses in CR-9772-2009 and CR-9774-2009. The complaints and informations listed December 3, 2008, as the offense date in CR-9772-2009 and October 3, 2008, as the offense date in CR-9774-2009. However, at the March 11, 2011 hearing to consolidate CR-9772-2009, CR-9774-2009, and CR-13166-2010, the Commonwealth averred the assaults against Zangerl "all occurred on one day" but "in two different police districts." N.T., Mot. to

Consolidate/Mot. to Withdraw, 3/11/11, at 4.  The Commonwealth, however, then proceeded to trial as if the offenses in CR-9772-2009 and CR-9774-2009 occurred on two separate days.  *See* Commonwealth's Trial Memorandum at 3.

At trial, Zangerl testified in relevant part as follows.  The first incident of physical abuse occurred in her daughter's presence sometime before November 2007.  N.T., 1/9/14, at 64.  Approximately a year later, Appellant was arrested for the "independent event"—presumably, the firearms case discussed above.  *Id.* at 68.   He was away for a couple days and came back in a "very agitated" state.  *Id.*  at 71.

After Appellant's return, Zangerl and Appellant planned to attend a "meeting" in downtown Philadelphia.  *Id.* at 72.  Appellant picked up Zangerl at the University of Pennsylvania and took her home.  *Id.*  At her home, Appellant accused her of undermining his immigration status and "launched a fairly severe physical assault," pushing her over a car seat in the house and threatening to call his friends in Austria to have her mom killed.  *Id.* at 72-73.  He pinned her against a wall, choked her, and kneed her in her neck and underneath her ribs.  *Id.* at 73. Appellant then demanded she attend the meeting.  *Id.* at 74.  They drove downtown, and the meeting "appeared to have gone fairly well."  *Id.*   However, when driving back toward the University of Pennsylvania, Appellant "wound himself up in more and more of a furry [sic]" and attacked her.  He elbowed and "slammed" her, twisted

her arm saying he would break it, and "slammed" her against the window. *Id.* She returned to work and arranged to stay at a coworker's apartment. *Id.* at 75-76. Appellant discovered where she was and tried to break into the building, at which time a third party called the police. *Id.* at 76.

The next day, a Saturday, Zangerl filed for an emergency protection order. *Id.* at 77. She then filed a police report regarding these incidents on December 8, 2008. *Id.* The Commonwealth marked the December 8, 2008 police report as an exhibit. It adduced no additional evidence regarding when Zangerl sought the emergency protection order.[15]

At the close of the Commonwealth's case, Appellant raised motions for judgment of acquittal but did not challenge any of the charges in CR-9772-2009 and CR-9774-2009. *See* N.T. Trial, 1/15/14, at 3-7. Further, Appellant did not object when the trial court instructed the jury on the elements of the relevant crimes in CR-9772-2009 and 9774-2009, but did not refer to the alleged dates of the offense. *Id.* at 35-36, 37-42.

During its deliberations, the jury requested a clarification regarding the dates of offenses in CR-9772-2009 and CR-9774-2009. The trial court recited the jury's question as follows: "Does [CR-9772-2009] correspond to the incident in the car? Or does this bill pertain to the incident at the friend's house? Looking for clarification on which events pertain to [CR-

---

[15] We note Appellant's exhibit in support of his Rule 600 claim indicates an emergency protection from abuse was filed in Family Court on October 6, 2008. *See* Docket, *Zangerl v. Pouliczek*, 0809V8012, 2/25/13, at 1.

9772-2009 and CR-9774-2009]." *Id.* at 54. The Commonwealth informed that court that CR-9772-2009 "is the event dated 12/3/2008. That's the incident in the car." *Id.* It further averred that CR-9774-2009 "was dated 10/3/2008. That's the incident that took place at the house . . . pushing her over a seat of a car that was in the house." *Id.* Appellant's counsel did not object to the Commonwealth's assertions regarding the time of the offenses.

The trial court, however, did not immediately answer the question, and deliberations were delayed for inclement weather. On the next full day of deliberations, Appellant's counsel averred that Appellant "was in custody from 11/19/08" and requested that the charges in CR-9772-2009, which bore the offense date of December 3, 2008, be "stricken." N.T. Trial, 1/23/14, at 5. The Commonwealth objected noting Appellant did not adduce evidence of his incarceration. It also suggested October 3rd and December 3rd were not the dates of the incidents, but the dates when Zangerl reported the incidents. *Id.* at 5. The court denied Appellant's motion to strike the charges in CR-9772-2009, and answered the jury's question as follows: "As to the bill ending in 9772-2009 that relates to the alleged car incident. As to the bill ending in 9774, that relates to the alleged incident at the wife's house." *Id.* at 8. The jury returned three hours later with its verdicts.

Thus, the record evinces the trial court elected to clarify the confusion regarding the dates of the offenses as charged and as proved at trial by charging the jury to render verdicts without references to the dates. Our

review reveals that the charges in CR-9772-2009 and CR-9774-2009 should have listed an offense date bearing the same date, a fact which the Commonwealth concedes in its appellee's brief.

In **Commonwealth v. Karkaria**, 625 A.2d 1167 (Pa. 1993), the Pennsylvania Supreme Court held, "A criminal prosecution . . . requires proof beyond a reasonable doubt that the accused committed the offense charged at the time specified within the indictment." **Id.** at 1170. However, the Pennsylvania Supreme Court has also acknowledged that "[i]n general, the Commonwealth need not prove that the crime occurred on the date alleged in the indictment, except where the date is an essential issue in the case, e.g., where the defendant presents an alibi defense." **Commonwealth v. Young**, 748 A.2d 166, 182 (Pa. 1999) (holding "the trial court did not err in instructing the jury that they could find [defendant] guilty even if they found that the murder took place on a date other than that alleged in the indictment" where Commonwealth "eviscerated" defendant's alibi defense). Similarly, when addressing the effect of a variance between a date charged and that proven at trial, this Court has held, "Unless a variance could mislead the defendant at trial, impairs a substantial right, or involves an element of surprise that would prejudice the defendant's efforts to prepare a defense, it is not fatal." **Commonwealth v. Hacker**, 959 A.2d 380, 390 (Pa. Super. 2008) (citation omitted), *rev'd on other grounds*, 15 A.3d 333 (Pa. 2011).

In light of the foregoing, we reiterate:

> In an appellate brief, parties must provide an argument as to each question, which should include a discussion and citation of pertinent authorities. Pa.R.A.P. 2119(a). This Court is neither obliged, nor even particularly equipped, to develop an argument for a party. To do so places the Court in the conflicting roles of advocate and neutral arbiter. When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived.
>
> Moreover, "mere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter."

*In re S.T.S., Jr.*, 76 A.3d 24, 42 (Pa. Super. 2013) (some citations omitted), *appeal denied*, 91 A.3d 163 (Pa. 2014).

Instantly, Appellant's argument on this issue consists of two paragraphs that amount to less than one page. *See* Appellant's Brief at 46-47. He cites *Karkaria* for the proposition that a conviction may not rest upon speculation or conjecture. *See id.* at 46. His argument, however, does not address the record or threshold legal issues regarding the trial court's resolution of the variance between the charging instruments and the proofs at trial. *See id.* at 46-47. Accordingly, this failure to present an argument in support of his request for relief results in waiver. *See In re S.T.S., Jr.*, 76 A.3d at 42.

Appellant's final claim is that the trial court abused its discretion by rejecting a plea agreement that was presented to the court immediately before trial. He asserts the court erred by failing to place its reasons for the

rejection on the record and argues the court displaced an essential prosecutorial function by rejecting a plea agreement without a sound basis. Appellant's Brief at 51-52. In support, Appellant cites **United States v. Ammidown**, 497 F.2d 615 (D.C. Cir. 1973), and **State v. Bilse**, 581 A.2d 518 (N.J. Super Ct. Law Div. 1990).[16] **Id.** at 49. He claims he was forced to go to trial against his will and suggests he was entitled to the benefit of Commonwealth's agreement on charges, which would have reduced his maximum sentencing exposure to fifty-one years. **Id.** at 50-51; **see also** N.T., 1/7/14, at 8.

The following principles govern our review.

> [T]he trial court has broad discretion in approving or rejecting plea agreements. The court may reject the plea bargain if the court thinks it does not serve the interests of justice. If the court is dissatisfied with any of the terms of the plea bargain, it should not accept the plea; instead, it should give the parties the option of proceeding to trial before a jury.

**Commonwealth v. Parsons**, 969 A.2d 1259, 1268 (Pa. Super. 2009).

Pennsylvania Rule of Criminal Procedure 590(A)(3) states: "The judge may refuse to accept a plea of guilty or nolo contendere, and shall not accept it unless the judge determines after inquiry of the defendant that the

---

[16] We recognize that federal court decisions and decisions from other jurisdictions are not binding on this Court, but we may adopt their analysis as it appeals to our reason. **See Commonwealth v. Arthur**, 62 A.3d 424, 429 n.9 (Pa. Super.), *appeal denied*, 78 A.3d 1089 (Pa. 2013); **Commonwealth v. Vergilio**, 103 A.3d 831, 835 n.9 (Pa. Super. 2014), *appeal denied*, 114 A.3d 416 (Pa. 2015).

plea is voluntarily and understandingly tendered. Such inquiry shall appear on the record." Pa.R.Crim.P. 590(A)(3). Neither Rule 590 nor its comments require a statement of reasons for rejecting a plea agreement.

There is a dearth of case law in Pennsylvania regarding the procedural and substantive requirements for a court to reject a plea agreement. Under Rule 590(A)(3), a trial court **must** reject an agreement if it appears the plea is not knowingly, intelligently, or voluntarily entered. Pa.R.Crim.P. 590(A)(3). However, the United States Supreme Court has recognized that "defendants have 'no right to be offered a plea . . . nor a federal right that the judge accept it.'" *Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012) (citation omitted). The trial court's authority to reject a plea agreement is thus broad, but bound by the precept that a court may not do so out of "bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." *Cf. Parsons*, 969 A.2d at 1268; *Commonwealth v. Hebert*, 85 A.3d 558, 562 (Pa. Super. 2014).

Instantly, the following exchange occurred in court, following a lengthy colloquy on January 7, 2014, and with a jury pool assembled outside:

> THE COURT: First of all, do you wish to proceed with your guilty pleas?
>
> [Appellant]: I need to talk to the embassy first. If they can take and deport me immediately.
>
> THE COURT: Sir, we have a jury panel ready to go. So we are going to—either if you want to proceed with the guilty plea or we'll proceed to trial.

> [Appellant's counsel]: Your Honor, my client wishes me to contact the embassy to see if they can grant him immediate deportation.
>
> THE COURT: Okay. We're going to trial. Bring the panel in.
>
> *   *   *
>
> THE COURT: All right. Sir, you're in a courtroom. We are proceeding. We have a jury. We are going to trial.
>
> [Appellant]: Okay.
>
> THE COURT: All right.

N.T., 1/7/14, at 21.

The trial court did not provide an explanation of its reasons for rejecting the plea either at the hearing or in its Pa.R.A.P. 1925(b) statement. However, under the manifest circumstances set forth in the record, we find it apparent that the trial court's decision to reject the plea was not the product of "bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." **See Parsons**, 969 A.2d at 1268; **see also Hebert**, 85 A.3d at 562. The court repeatedly emphasized the case was ready for trial. The Commonwealth informed the court that Zangerl had flown in from abroad for trial. Appellant steadfastly refused to enter a plea before learning whether he could obtain immediate deportation. The obvious gamesmanship engaged in by Appellant cannot be condoned.[17] Thus, no relief is due.

---

[17] We emphasize that it was Appellant's desire for immediate deportation. Therefore, this is not a case where a defendant was unaware that his plea

Lastly, we address *sua sponte* the sentences imposed in CR-6021-2011, for crimes committed against Gonzalez, specifically, the five and a half to fifteen years' imprisonment for intimidation of a witness (subsection (a)(2)) and the consecutive five and a half to eleven years' imprisonment for intimidation of a witness (subsection (a)(3)). We may address *sua sponte* the propriety of the sentences for two different subsections of the same statute based on the same conduct as a legality-of-sentence challenge. ***See Commonwealth v. Shannon***, 608 A.2d 1020, 1024 (Pa. 1992); ***Commonwealth v. Provenzano***, 50 A.3d 148 (Pa. Super. 2012). ***Commonwealth v. Williams***, 871 A.2d 254, 262 (Pa. Super. 2005).

We consider whether the General Assembly intended to the definitions of the crime to create alternative bases of liability or authorize separate and consecutive punishments for each subsection. ***Cf. Commonwealth v. Rhoads***, 636 A.2d 1166, 1168 (Pa. Super. 1994).

Section 4952 defines the crime of intimidation as follows:

> **(a) Offense defined.--**A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:
>
> (1) Refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.

---

carried immigration consequence and sought advice. ***See Padilla v. Kentucky***, 559 U.S. 356 (2010).

**(2) Give any false or misleading information or testimony relating to the commission of any crime to any law enforcement officer, prosecuting official or judge.**

**(3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.**

(4) Give any false or misleading information or testimony or refrain from giving any testimony, information, document or thing, relating to the commission of a crime, to an attorney representing a criminal defendant.

(5) Elude, evade or ignore any request to appear or legal process summoning him to appear to testify or supply evidence.

(6) Absent himself from any proceeding or investigation to which he has been legally summoned.

18 Pa.C.S. § 4952(a)(1)-(6) (emphasis added).

Instantly, the text of the statute evinces an intent to impose liability based on the *actus reus—i.e.*, "intimidates or attempts to intimidate"— undertaken with required *mens reus—i.e.,* knowledge that "his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice." **See** 18 Pa.C.S. § 4952(a). Subsections (a)(1) through (a)(6), in turn, list a range of alternative results that give rise to the offense. Appellant's convictions in CR-6021-2011 under 18 Pa.C.S. 4952(a)(2) and (3) arose from a single act, namely, his letter to Danazina regarding Gonzalez. Therefore, we conclude the separate sentences under subsection

(a)(2) and (a)(3) violate double jeopardy and must be vacated. *See Provenzano*, 50 A.3d at 157; *Williams*, 871 A.2d at 262. Because this affects the trial court's sentencing scheme, we vacate the judgment of sentence and remand for resentencing. *See Provenzano*, 50 A.3d at 157.

Convictions affirmed. Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/24/2015