J-A28035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MICHAEL GLOVER :
:
Appellant : No. 2721 EDA 2018

Appeal from the Judgment of Sentence Entered May 31, 2018
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0000227-2017

BEFORE: PANELLA, P.J., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.: Filed: March 23, 2020

Michael Glover appeals from the judgment of sentence imposed on May 31, 2018, in the Court of Common Pleas of Montgomery County. This followed his non-jury conviction of one count each of terroristic threats and harassment.[1] The trial court sentenced him to an aggregate term of 19 to 38 months' imprisonment. On appeal, Appellant claims the trial court erred in denying his speedy trial motion. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

On January 1, 2016, Appellant called his ex-girlfriend over 30 times at her place of employment. Appellant made these calls from a blocked telephone

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2706(a)(1) and 2709(a)(5), respectively.

number and did not identify himself; however, the victim recognized his voice. He told one of the victim's co-workers he planned on killing the victim. He also sent the victim multiple e-mails, two of which included threats to harm her.

That same day, the police filed a criminal complaint against Appellant. For reasons discussed in greater detail below, the police were unable to immediately arrest Appellant. On October 19, 2017, Appellant filed a motion asserting his right to a speedy trial had been violated, also known as a Rule 600 motion. A hearing took place on October 31, 2017, after which the trial court denied the motion.

Several months later, a stipulated bench trial was held, and, on May 31, 2018, the trial court sentenced Appellant as delineated above. Appellant filed a timely post-sentence motion, which the trial court denied on September 11, 2018.[2] The instant, timely appeal followed.

On September 24, 2018, the trial court directed Appellant to file a concise statement of errors complained of on appeal. On October 19, 2018, Appellant filed an untimely Rule 1925(b) statement. Thereafter, the trial court

---

[2] On December 5, 2018, this Court issued a rule to show cause as to why the appeal should not be dismissed as interlocutory as it appeared to us Appellant, acting *pro se*, had also filed an untimely post-sentence motion and the trial court's September 11, 2018 order denied that motion, not the timely one. Counsel filed a response on December 6, 2018; on December 11, 2018, this Court discharged the rule to show cause and referred the issue to the merits panel. Upon review of counsel's response, we agree our issuance of the rule to show cause was based upon an erroneous reading of the record and the appeal is properly before us.

filed an opinion, acknowledging the untimeliness of the statement but, nonetheless, addressing the merits of Appellant's claim. Trial Court Opinion, 1/22/19, at 7 n.8.

Prior to addressing the merits of Appellant's claim, we must address his failure to file a timely Rule 1925(b) statement. In a criminal case, Rule 1925(c)(3) requires remand for the filing of a 1925(b) statement and corresponding 1925(a) opinion where counsel failed to file a court-ordered 1925(b) statement. **See Commonwealth v. Burton**, 973 A.2d 428 (Pa. Super. 2009). Where, as here, counsel filed an untimely Rule 1925(b) statement, we may remand to allow for preparation of a responsive trial court opinion. **Id.** at 432. However, when the trial court filed an opinion addressing the issues presented in the belated Rule 1925(b) statement, we need not remand and may instead consider the merits of the issues. **Id.** at 433; **see also Commonwealth v. Jabbie**, 200 A.3d 500, 504-05 (Pa. Super. 2018) (declining to remand or find waiver where trial court addressed merits of issues raised in untimely Rule 1925(b) statement). Here, as the trial court addressed the merits of Appellant's Rule 600 claim, we decline to find waiver or remand and will address the substantive issue.

Appellant contends the trial court abused its discretion by denying his motions for dismissal of charges on Pa.R.Crim.P. 600 speedy trial grounds. We disagree.

- 3 -

We review an order denying relief under Rule 600 to determine whether the trial court abused its discretion. *See Commonwealth v. Robbins*, 900 A.2d 413, 415 (Pa. Super. 2006). The scope of our review is limited to the evidence presented at the Rule 600 hearing. *See id*. In performing our review, we must view the evidence in the light most favorable to the party who prevailed in the trial court. *See id*.

We must consider the dual purposes that underlie Rule 600. *See Commonwealth v. Hunt*, 858 A.2d 1234, 1239 (Pa. Super. 2004) (*en banc*). First, obviously, we must protect the accused's right to a prompt trial. *See id*. Equally, however, we must consider society's right to effective prosecution of crimes. *See id*. Rule 600 was not intended to terminate a good faith prosecution when trial is delayed through no fault of the Commonwealth. *See id*.

Generally, the Commonwealth must bring a defendant to trial within 365 days of the date the complaint is filed. *See* Pa.R.Crim.P 600(A)(2)(a). However, if trial commences more than 365 days after the filing of the complaint, a defendant is not automatically entitled to discharge pursuant to Rule 600. *See Commonwealth v. Roles*, 116 A.3d 122, 125 (Pa. Super. 2015).

Rather, a court must first account for any excludable time and excusable delay. *See Commonwealth v. Goldman*, 70 A.3d 874, 879 (Pa. Super. 2013). Excludable time is any period of delay that is attributable to the

- 4 -

defendant or his counsel. *See Commonwealth v. Matis*, 710 A.2d 12, 16 (Pa. 1998). Excusable delay, in contrast, is any period of delay that is the result of circumstances beyond the Commonwealth's control despite its due diligence. *See Commonwealth v. Ramos*, 936 A.2d 1097, 1102 (Pa. 2007).

Due diligence by the Commonwealth does not require perfect vigilance, but rather a showing of a reasonable effort to satisfy the dictates of Rule 600. *See Commonwealth v. Moore*, 214 A.3d 244, 248-49 (Pa. Super. 2019). "The Commonwealth . . . has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence." *Commonwealth v. Cole*, 167 A.3d 49, 71 (Pa. Super. 2017) (citation and quotation marks omitted), *appeal denied*, 186 A.3d 370 (Pa. 2018).

Our courts employ a three-step inquiry for evaluating whether there is a Rule 600 violation. We begin by calculating the "mechanical run date," which is 365 days after the complaint was filed. *See Commonwealth v. Wendel*, 165 A.3d 952, 956 (Pa. Super. 2017). Then, we determine if any excludable time and excusable delay exists. *See id*. And, finally, we add the amount of excludable time and excusable delay, if any, to the mechanical run date in order to compute the adjusted run time. *See id*.

In the instant matter, the criminal complaint was filed on January 1, 2016. Accordingly, the mechanical run date was December 31, 2016.[3] The

---

[3] 2016 was a leap year.

Rule 600 hearing took place on October 31, 2017, 670 days after the filing of the complaint. Appellant was not brought to trial until March 1, 2018, 791 days after the filing of the complaint.

Initially, the 365th day, December 31, 2016, was a Saturday. It is settled if the mechanical run date falls on a weekend or legal holiday, the days prior to the next business day are excluded. *See Commonwealth v. McCarthy*, 180 A.3d 368, 376 (Pa. Super. 2018), *appeal denied*, 193 A.3d 346 (Pa. 2018). Therefore, because the next business day was January 2, 2017, it became the adjusted run date. Moreover, because Appellant neither filed a new Rule 600 motion below nor renewed his old one, he waived any claim the Commonwealth did not act with due diligence in bringing him to trial during the 122-day period between the Rule 600 hearing and trial.

The record also reflects the period of delay between August 29, 2017, and October 16, 2017, was caused by Appellant's decision to attempt to obtain private counsel. This 49-day delay does not count against the Commonwealth. *See Commonwealth v. Peterson*, 19 A.3d 1131, 1137 (Pa. Super. 2011) (holding delay caused by defendant's request to obtain private counsel is excludable). Moreover, the twelve days between the filing of Appellant's speedy trial motion and its disposition are excusable time.[4] *See Commonwealth v. Booze*, 953 A.2d 1263, 1277 (Pa. Super. 2008).

---

[4] The 12th day, July 4, 2017, was a legal holiday.

Appellant focuses on the remaining time, which is dividable into three distinct periods, the time between the filing of the complaint and locating Appellant; the time between locating Appellant and arraignment; and the time between arraignment and the filing of the Rule 600 motion. He claims the Commonwealth failed to make reasonable efforts to search for Appellant between January 1, 2016, and the date the police discovered he was incarcerated in Philadelphia on March 17, 2016, a period of 77 days. **See** Appellant's Brief, at 15-23. Appellant also maintains the trial court erred in failing to attribute the delays in arraigning Appellant from March 18, 2016 to January 10, 2017, a period of 299 days to the Commonwealth rather than the District Court. **See id.**; **see also** Appellant's Reply Brief, at 1-13. Lastly, Appellant avers the trial court erred in finding the administrative delays in trying the case between arraignment and the Rule 600 hearing were excusable. Appellant's Brief, at 23-24; Appellant's Reply Brief, at 13-16. We disagree.

The trial court described the events which took place after the police filed the complaint as follows:

> On January 1, 2016, a criminal complaint was filed against [Appellant] for [t]erroristic [t]hreats and [h]arassment. An arrest warrant was issued on January 4, 2016. At the time the complaint was filed, authorities did not know [Appellant's] whereabouts. (N.T. Rule 600 Hearing, 10/31/17, 14-15). On January 6, 2016, [Appellant] called District Court 38-1-18 (the "District Court") regarding his knowledge of the arrest warrant and the court instructed him to contact the Montgomery Township Police Department and Officer Taylor Jones for more information. **Id.** at 35. It does not appear that [Appellant] followed this instruction.

- 7 -

Officer Jones had filed the criminal complaint, was unaware of [Appellant's] call to the District Court, and made attempts to locate [Appellant] in Philadelphia, PA and Bridgewater, NJ based upon information he received, but was unsuccessful. *Id.* at 15, 17.

On March 17, 2016, the officer received a "HIT" confirmation that [Appellant] had been arrested in Philadelphia, PA [on an unrelated matter]. *Id.* at 18. Officer Jones attempted to lodge a detainer but was unable to do so due to the active arrest warrant. *Id.* On March 15, 2016, an attorney entered his appearance for [Appellant] and called regarding [Appellant] turning himself in. *Id.* at 35, 50. The District Court informed the attorney he "had to again contact the police department and turn himself in at the Montgomery Township Building." *Id.* at 35. On March 18, 2016, the police department dispatcher sent a copy of the arrest warrant to the Philadelphia prison where [Appellant] was incarcerated. *Id.* On March 21, 2016, another arrest warrant was issued and the police department dispatcher refaxed the arrest warrant to the Philadelphia prison so that it would be attached to [Appellant's] file. *Id.* at 19, 20-21. That same date, the Montgomery Township Police Department called the District Court to see what information they had and the District Court [mistakenly] informed the police department that Philadelphia "had defendant and let him go instead of holding him for the [Montgomery Township Police Department]." *Id.* at 36. [Appellant], however, had been incarcerated the entire time dating from his arrest on March 17, 2016. *Id.* at 58.

On April 19, 2016, the officer received another "HIT" confirmation from Philadelphia and a request to fax the arrest warrant again to confirm that it was still active. *Id.* at 20. The police department dispatcher faxed a copy of the warrant "to ensure that [Appellant] was not released." *Id.*

On June 28, 2016, [Appellant's] attorney called the District Court to ask for an arraignment to be scheduled. *Id.* at 40; (Commonwealth Exhibit 3 from October 31, 2017 Rule 600 hearing). The District Court contacted the Philadelphia prison in an attempt to schedule a video arraignment but was informed that the equipment in Philadelphia was not working. (N.T. Rule 600 Hearing, 10/31/17, at 40).[a] The District Court asked Officer Jones via email to forward dates in which he could pick up [Appellant] utilizing a writ and bring him to an arraignment. *Id.*

- 8 -

at 40. Officer Jones sent an email to the District Court to inform them that he was available for a preliminary arraignment on July 20 and 21, 2016. *Id.* at 22. On June 29, 2016, the District Court administrator emailed a public defender to inform him of the situation and stating that District Court administrator "wasn't sure how to proceed." *Id.* at 40.[b] It does not appear that the District Court received a response to this email. On July 20, 2016, the District Court contacted [Appellant's] attorney again because information in the "Vine Link" system indicated that he had been paroled. *Id.* at 37. Defense counsel indicated that he did not know if [Appellant] was still incarcerated or not and agreed to the District Court's request to leave the arrest warrant in place. *Id.* at 39. The District Court also informed the Montgomery Township Police Department of these developments. *Id.* at 37. Thus, the District Court did not hold a preliminary arraignment or preliminary hearing in July 2016.

[a] The District Court administrator indicated on cross examination that it was a common problem for Philadelphia video equipment to be non-functioning and to bring [d]efendants in from Philadelphia by [w]rit. *Id.* at 47-48.

[b] It is unclear why the District Court administrator contacted a public defender who was not [Appellant's] attorney of record at this time.

On November 8, 2016, [Appellant's] attorney apparently contacted the District Court to request a preliminary arraignment and preliminary hearing and the District Court attempted to schedule this with Officer Jones for that date. *Id.* at 24. The District Court subsequently cancelled the arraignment and preliminary hearing for that date due to scheduling conflicts and miscommunications, and the parties attempted to reschedule it for November 10, 2016, but that date was also cancelled. *Id.* at 25. Specifically, Officer Jones testified that when he told the administrator that he would have to check to see his witnesses' availability, "I believe [the administrator] misunderstood and thought it wouldn't be possible so she cancelled the hearing at that point." *Id.* at 24. The District Court rescheduled the preliminary hearing and arraignment for January 10, 2017. *Id.* at 25, 43. The District Court administrator testified that she did not know why the hearing was moved from November to January. *Id.* at 43. The preliminary arraignment/arrest ultimately occurred on

January 10, 2017[,] and [Appellant] waived his preliminary hearing and all charges were held over for court. ***Id.*** The Montgomery County Court of Common Pleas received the magisterial dockets on January 17, 2017.

Judge Steven O'Neill set forth the subsequent procedural history of the case as follows:

THE COURT:    [0]n the pretrial conference, it appears that [Appellant] was brought down on April 20[,2017]. And [defense counsel] on that day, in accordance with the policy of Judge O'Neill's call of the pretrial conference list, simply said this case should be on a trial track and called it for trial.

[Defendant] was again brought down for call of the trial list—excuse me. Bills of information were filed on [April 3, 2017]. [Defense counsel] entered his appearance on May 5th of 2017. And it appears that at the first call of the trial list, which was May 15th of 2017, the case was called for a jury trial and placed on this court's standby trial list.

Now, again, for any purposes that may become relevant for due diligence to the District Attorney's Office, the Court's procedures, this Court's standby trial list is simply an inventory of cases that are called for trial during a two-week—two-to-four-week period that follows the call of the trial.

They are called in based upon a number of factors, but it is using the judicial determination as to what is called in. And generally we try to

- 10 -

follow a pattern of calling the older cases in before the newer cases. Nonetheless, it does not appear it was reached during that period of time.

The Commonwealth filed a Motion to [a]dmit [e]vidence of [p]rior [b]ad [a]cts on May 17th. And then it followed a series of waiting further call of the trial list.

Again, the next one was June 26th. The Court does note that during the—from May 22nd to about June 22nd this Court was unavailable in that it was presiding in the case of the Commonwealth versus Cosby. So the next trial—there [were] no trials that were heard during that period of time.

The next one was called on June 26th, and for that period of time it was again on the standby trial list and not reached.

It was then placed again on the July call of the trial list, on July 31st. The Court was—had numerous periods of time that it was unavailable due to either vacation or being off duty. Nonetheless, it was not reached during that next standby trial period of time.

It was then called again for the—it was then on the 24th of August called for trial for a two-day jury trial to commence on August 29th of 2017. That was by order of July 24th. So it was reached at least seemed to be reached in there.

Again, the Commonwealth filed another [m]otion to [a]dmit [p]rior [b]ad [a]cts. The Commonwealth also filed another [m]otion to [a]dmit [b]ad [a]cts. So there are three motions outstanding.

And then on August 29th it lists here that defense requested a continuance because [Appellant] at that stage wanted private counsel. The Court granted the continuance.

We then came back to another call of the trial list, and at that stage the defense requested another continuance in that they were still searching for counsel.

[* * *]

THE COURT: September 11th we were all here. There's nothing written. It simply says to be placed on the next call of the trial list. Motion was listed for defense. I don't have any other information. If there's a dispute, those are the kinds of things—

[DEFENSE]: Judge, I think he was removed from that list based on the continuance from the 29th.

THE COURT: Right. So I think all that did was simply say it was on a list. We didn't put you on this list again because we're still waiting for him to find counsel.

[DEFENSE]: Correct.

THE COURT: So it was again reviewed at this most recent list and placed on our

- 12 -

> call of the trial list for October 16th. And it was. Transportation orders were done. And on October 16th, again it appeared at this stage that [defense counsel] would remain in the case, that there was no outside counsel coming in. And again it was called again for a standby two-day jury trial. And that was filed on October 19th by the within [M]otion to [D]ismiss and originally being scheduled for the miscellaneous list, but this Court had an opening and scheduled it for today.

*Id.* at 8-12.

Trial Court Opinion, 1/22/19, at 1-6.

Initially, we find no abuse of discretion in the trial court's finding the 77-day period of time between the filing of the complaint and locating the defendant is excludable. The comment to Rule 600 specifically provides "the period of time between the filing of the written complaint and the defendant's arrest [is excluded], provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence." Pa.R.Crim.P. 600, *Comment*, Computation of Time (2013).

Here, the record reflects while Appellant's criminal activity took place in Montgomery County, he resided in Philadelphia and worked in New Jersey. The records also reflect the police were in contact with the police departments in both locations and they were unable to locate him. Further, there is no indication on the record the District Court informed the police about Appellant's January 6, 2016 telephone call. Viewing the facts as we must in

the light most favorable to the Commonwealth as the prevailing party, we conclude the trial court did not abuse its discretion in finding the Commonwealth made reasonable efforts to locate Appellant between January 1, 2016, and March 17, 2016. We therefore add those 77 days and arrive at an adjusted run date of September 20, 2017.

We next address the 299-day period it took to arraign Appellant, which occurred between March 18, 2016, and January 10, 2017. In its opinion, the trial court attributed the delays in arraigning Appellant to the District Court stating:

> the record is replete with instances in which the District Court either received faulty information regarding [Appellant's] incarceration status, incorrectly rescheduled the arraignment, did not follow up on when Officer Jones could bring [Appellant] in on a writ, or had no explanation for the lengthy delays in attempting to schedule the preliminary arraignment. To the extent Officer Jones can be labeled as an agent of the Commonwealth for purposes of Rule 600, he exercised due diligence in the three (3) months it took for [Appellant] to be apprehended. The officer investigated leads in Philadelphia, PA and Bridgewater, NJ in an attempt to find [Appellant]. This time [is] excludable under Pa.R.Crim.P. 600(C). Further, Officer Jones exercised diligence in his attempts to have a detainer placed on [Appellant] in Philadelphia and in attempting to coordinate the scheduling of a preliminary arraignment. The failure to schedule the arrest and preliminary arraignment in order to avoid a violation of the mechanical run date is almost entirely attributable to the ineffectual efforts undertaken by the District Court.

Trial Court Opinion, 1/29/19, at 9. The trial court also relied on the Pennsylvania Supreme Court's decision in *Commonwealth v. Bradford*, 46 A.3d 693 (Pa. 2012), for the proposition that delays caused by mistakes made by the minor judiciary are excusable delays beyond the Commonwealth's

control. *See* Trial Court Opinion, 1/29/19, at 9-11; *Bradford*, 46 A.3d at 702-05.

In his brief and reply brief, Appellant disregards our obligation to view the facts in the light most favorable to the prevailing party and urges us to find the delay attributable to Officer Jones' refusal to transport Appellant from Philadelphia to Montgomery County; he further argues *Bradford* is distinguishable and relies, instead, on a decision from a panel of this Court, which post-dated the trial court's opinion, *Commonwealth v. Carter*, 204 A.3d 945 (Pa. Super. 2019). *See* Appellant's Brief, at 15-23; Appellant's Reply Brief, at 1-13.

Initially, we are unpersuaded by Appellant's attempt to convince us the police were responsible for the delay in formally arresting and arraigning Appellant because they refused to pick up Appellant in Philadelphia. Aside from the fact this interpretation of the evidence ignores our standard of review, it is simply unsupported.

The only evidence of record cited by Appellant is an e-mail between District Court administrator Paula Shumacher and Gregory Nestor of the Montgomery County Public Defender's Office. In that e-mail Ms. Schumacher states, "I have a police department that doesn't think they will go and get [Appellant] just for an arraignment." N.T., Rule 600 Hearing, 10/31/17, at 40-41, Commonwealth's Exhibit 3. Defense counsel did not bring up this statement at the hearing and did not question Schumacher about it. *Id.* at

44-48. The e-mail itself provides no context for Schumacher's statement and no explanation for the basis of her belief the police were unwilling to transport Appellant, which is particularly surprising given Officer Jones' testimony and his e-mail giving her the dates he was available to transport Appellant and which Schumacher confirmed. *See id.* at 20-22, 40-41. Further, Schumacher agreed it was the normal practice for the District Court to issue writs and have defendants brought down from Philadelphia. *See id.* at 47-48.

Moreover, Appellant's attempts to bolster this argument by claiming Officer Jones' testimony supported the claim of the police's unwillingness to transport Appellant is equally unavailing. Defense counsel asked Officer Jones a simple, factual question – did he transport anyone between Philadelphia and Montgomery County during the period in question. *Id.* at 31. Officer Jones answered, "no." *Id.*

This question is irrelevant. Defense counsel did not question Officer Jones about the police department's policy on transporting defendants between counties, or if his department had any defendants other than Appellant who required transportation during this period. Further, counsel did not ask Officer Jones if he was ever asked to transport a defendant during this period, or if he had ever refused such a request. We see nothing in his answer that demonstrated any unwillingness on the part of the police to transport Appellant or any other defendant between Philadelphia and Montgomery County.

We have thoroughly reviewed both the Rule 600 hearing transcript and accompanying exhibits in this matter. Viewing the evidence in the light most favorable to the Commonwealth as the prevailing party, we see nothing which would cause us to question the trial court's finding the delay in arresting/arraigning Appellant was caused by anything other than the actions of the district court. Thus, we next turn to the question of whether this delay should be imputed to the Commonwealth.

In **Bradford**, there was a delay in bringing the defendant to trial because the district court failed to forward the preliminary hearing transcript to the court of common pleas and thus, did not trigger the process which would have placed the case in the computer and on the trial court's and Commonwealth's calendars. **Bradford**, 46 A.3d at 695-96. The trial court granted the defendant's Rule 600 motion and dismissed the case, finding the Commonwealth had notice of the case because an assistant district attorney had appeared at the preliminary hearing and, therefore, due diligence required the maintenance of a separate calendaring system, which would have mitigated the effects of the district court's error. **Id.** at 697.

This Court affirmed on appeal. Our Supreme Court reversed, holding, "we conclude that here the District Attorney's office exercised due diligence when it relied upon the minor judiciary following the specific, mandatory Rules of Criminal Procedure, which placed upon the District Judge the obligation to transmit timely papers to the common pleas court." **Id.** at 704-05.

- 17 -

However, in a recent decision, a panel of this Court, in a factual scenario which more closely resembles the instant matter, distinguished **Bradford**. **Carter**, 204 A.3d at 948-49. In **Carter**, the defendant was incarcerated on an unrelated matter at a state correctional institute at the time of the filing of the criminal complaint in February 2017. **Id.** at 946. Although the police made several inquiries of the district court, the defendant was not arraigned until February 2018, because of problems with the video system and the refusal of the Magisterial District Judge to allow the police to obtain an order of transport. **Id.**

After the trial court *granted* the Rule 600 motion, the Commonwealth appealed. In a brief decision, which relied heavily on our deferential standard of review and the necessity to view the facts in the light most favorable to the prevailing party, this Court affirmed. **See id.** at 949. The **Carter** panel held where the Commonwealth was aware of the defendant's location at all times and had means other than video to arraign him, it was the Commonwealth's responsibility to bring him to trial in a timely fashion. **Id.**

Here, unlike in **Carter**, the trial court found the Commonwealth had exercised due diligence. Moreover, unlike in **Carter**, the Commonwealth was not always aware of Appellant's location, in large part because of misinformation provided to them by the district court. Another distinction from **Carter** is the fact that the District Court, even after being given dates and times of availability of both the police and the witness, *sua sponte* either failed

to schedule the arraignment on the supplied dates and/or canceled the arraignment without explanation.

While we agree with the **Carter** panel it is the Commonwealth's burden, not the defendant's, to see trial commence in a timely fashion, the reality is the Commonwealth must do so in cooperation with the court system. The practice in Montgomery County was for the District Court to schedule the arraignment. Where, as here, it puts repeated obstacles in the Commonwealth's path, including, on two occasions, misinforming the police about Appellant's whereabouts, and is unable to provide any explanation whatsoever for its pattern of failing to schedule and/or canceling arraignments, we see no basis to find an abuse of discretion in the trial court's holding the Commonwealth exercised due diligence. Thus, we affirm the trial court's finding the 299-day period of delay between locating Appellant and arraigning him was excusable. This brings the adjusted run date to July 16, 2018. Appellant's trial took place on March 18, 2018, well before the adjusted run date.

Because the exclusion of the period between March 18, 2016, and January 10, 2017, brings us under 365 days, we need not address Appellant's claim the trial court erred in finding the time between arraignment and the Rule 600 hearing, not including the delays attributable to Appellant, excusable because of problems with the court's calendar. In any event, Appellant waived any claim regarding the remainder of those days.

As the trial court states in its opinion, the focus of the Rule 600 hearing was on the days between locating Appellant and official arrest/arraignment. Trial Ct. Op., at 8. We see nothing in the record which demonstrates Appellant ever challenged the trial court's statement at the hearing the delays between placing the case on the standby trial list in May 2017 and the Rule 600 hearing were caused by problems with the court calendar and the aforementioned delays caused by the defense. Because Appellant did not challenge this conclusion below, he cannot now raise it for the first time on appeal. **See** Pa.R.A.P. 302(a); **see also Commonwealth v. Cain**, 906 A.2d 1242, 1244 (Pa. Super. 2006) (speedy trial issue waived on appeal when not properly presented to the trial court).

Even if this were not the case, we would still find the claim waived. Appellant's argument on this issue consists of four sentences and is devoid of citation to the record or to any pertinent legal authority. It does not contain any argument as to why we should disregard settled law that states delays caused by administrative decisions of the courts are excused. **See Commonwealth v. Riley**, 19 A.3d 1146, 1149 (Pa. Super. 2011); **Commonwealth v. Trippett**, 932 A.2d 188, 198 (Pa. Super. 2007) (delays caused by court's unavailability are excused). Appellant's failure to develop a meaningful argument with citation to relevant, legal authority on this claim in his appellate brief constitutes a waiver of the issue. **See Commonwealth v. Einhorn**, 911 A.2d 960, 970 (Pa. Super. 2006) (concluding arguments which

are undeveloped and lack citation to factual background or certified record are waived). Thus, Appellant waived this claim for this reason as well.[5]

Appellant's claim is without merit. Accordingly, we affirm the judgment of sentence.

Judgement of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/23/20

_____

[5] To the extent Appellant attempts to raise various alternate theories in support of this contention in his reply brief, the claim is still waived. **See Commonwealth v. Otero**, 860 A.2d 1052, 1054 (Pa. Super. 2004) ("Issues presented before this [C]ourt for the first time in a reply brief are waived"). While we are not unsympathetic to Appellant's contention the originally assigned trial judge waited far too long, particularly in light of the delays in arraigning Appellant, to transfer the case to a different jurist, we see no legal basis to burden the Commonwealth with the responsibility to scrutinize the assigned judge's schedule, make a determination the schedule is too overloaded, and file a request to transfer the case to another judge.